## JONES v. OGDEN CITY et al.

No. 1817. Decided April 16, 1907 (89 Pac. 1000).

1. DAMAGES — PLEADING — ISSUES — EXTENT AND DURATION OF PER-
   SONAL INJURIES. Where, in a personal injury action, the com-
   plaint alleged "that plaintiff was injured by reason thereof, that
   his right arm and right leg were badly bruised and sprained, . . .
   and that he was otherwise made sick, sore, and lame and was
   thereby detained from his business for thirty days," the allega-
   tions are broad enough to admit proof of the extent and duration
   of the injuries therein alleged.

2. PLEADING — AMENDMENT OF COMPLAINT — SUBJECT-MATTER.
   Where after objections to questions as to the length of time be-
   fore plaintiff could work were sustained on the ground that the
   allegation fixed the time at thirty days, it was error to refuse
   plaintiff leave to amend by substituting the word "ninety" for
   "thirty," since the amendment did not raise any new issue or in-
   ject any new element into the case.

3. MUNICIPAL CORPORATIONS — TORTS — OBSTRUCTIONS IN STREETS — NOTICE OF OBSTRUCTION — QUESTION FOR JURY. In a personal injury action, whether a city had notice of an obstruction in a street *held* under the evidence to be a question for the jury.

4. SAME — NOTICE OF OBSTRUCTION — FACTS DETERMINING NOTICE. In an action for damages sustained from obstructions in a street, the question of notice to the city is not alone determined from the length of time a defect existed, but also from the nature and character of the defect, the extent of the travel, and whether it is a populous or sparsely settled part of the city.[1]

5. SAME — NEGLIGENCE. Whether defendant's negligence, in allowing obstructions to remain in a street unguarded, caused plaintiff's injury, *held*, under the evidence, to be a question for the jury.

APPEAL from District Court, Second District; J. A. Howell Judge.

Action by Charles A. Jones against the city of Ogden and others. From a judgment for defendants, plaintiff appeals.

REVERSED AND REMANDED.

*N. J. Harris* for appellant.

*W. L. Maginnis, Jno. E. Bagley,* and *Joseph Chez* for respondent.

APPELLANT'S POINTS.

Notice to the police department of the existence of such obstructions constituted actual notice thereof to the city. (*Denver v. Dean,* 10 Col. 375, 3 Am. St. 594; *Farley v. Mayor of New York,* 152 N. Y. 222, 57 Am. St. 511; *Carrington v. St. Louis,* 89 Mo. 208, 58 Am. Rep. 108; *Rehberg v. Mayor of New York,* 91 N. Y. 137, 43 Am. Rep. 657.)

Moreover the questions as to whether the municipality had notice, and if so, whether it had sufficient time to remove the obstructions or to guard them before the accident, are questions of fact for the jury to determine, and not for the

---

[1] Scoville v. Salt Lake City, 11 Utah 60, 39 Pac. 481.

court. (*Scoville v. Salt Lake City,* 11 Utah 60, and cases cited on page 65; *Rehber v. Mayor of N. Y.,* supra.)

## RESPONDENT'S POINTS.

Notice must be brought home to a proper officer charged with the maintenance and supervision of the streets. (Elliot on Roads and Streets [2 Ed.], sec. 629; *Hines v. Fond Du Lac,* 71 Wis. 74; *Warsaw v. Dunlap,* 112 Ind. 576; *Mayor of Franklin v. House* [Tenn.], 55 S. W. 153; *Madison v. Baker,* 103 Ind. 41; *Chicago v. McCarthy,* 75 Ill. 602; *Carrington v. St. Louis,* 88 Mo. 208; *Littlefield v. Norwich,* 40 Conn. 406; *Chapman v. Mayor,* 55 Ga. 566.) "It is the settled law of this court that when the evidence given at the trial with all the inferences that the jury could justifiably draw from it is insufficient to support a verdict for the plaintiff, so that such verdict if returned must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant." This rule is supported by *Pleasant v. Fant,* 22 Wal. (U. S.) 116; *Herbert v. Butler,* 97 (U. S.) 319; *Bowditch v. Boston,* 101 (U. S.) 16; *Greggs v. Houston,* 104 (U. S.) 553. In the following cases held that the time was too short to impute notice, in the absence of express notice, and did not afford evidence of negligence such as would warrant the judges in submitting the matter to the jury. (*Breil v. Buffalo,* 144 N. Y. 163, 38 N. E. 977; *Carey v. Ann Arbor,* 124 Mich. 134, 82 N. W. 804; *Warsaw v. Dunlap,* 112 Ind. 579, 14 N. E. 568; *Lewisville v. Boston,* 29 Ind. App. 21, 63 N. E. 861; *Leipsic v. Gerdeman,* 68 Ohio St. —, 67 N. E. 87; *Breil v. Buffalo,* 144 N. Y. 163, 38 N. E. 977; *Carey v. Ann Arbor,* 124 Mich. 134, 82 N. W. 804; *Smith v. Walker Twp.,* 117 Mich. 14, 4 Am. Rep. Neg. 500; *Klatt v. Milwaukee,* 53 Wis. 196; *Ince v. Toronto,* 20 Occ. N. 300; *O'Connor v. New York,* 29 N. Y. St. 502; *Franklin v. House,* 104 Tenn. —, 55 S. W. 153.)

## STATEMENT OF FACTS.

Plaintiff brought this action to recover damages for personal injuries alleged to have been received by him through

the negligence of defendants. Each of the defendants filed a separate answer, and a trial was had to a jury. When the evidence was all in and each of the respective parties had rested, the court, on motion of defendants, directed a verdict in their favor, "No cause of action," on the ground that the evidence was insufficient to support a verdict for plaintiff. From the judgment entered on the verdict, plaintiff has appealed to this court.

The facts, as disclosed by the record, are about as follows: On August 3, 1904, defendant Louis J. Bucher was constructing a sidewalk in front of a building owned by defendant George E. Maule, and located on the east side of Washington avenue, which is one of the principal business streets and the main thoroughfare of Ogden City, Utah. Bucher had collected and placed on the street a large pile of building material, consisting of sand, gravel, cement, and lumber, the same extending out into the street from the curbing of the sidewalk, a distance variously estimated at from twelve to twenty feet. The lumber and cement were piled next to the sidewalk, and the sand and gravel were piled just outside of the cement and lumber. On the third day of the work, August 3, 1904, defendant Maule, for whom the work was being done, purchased two large iron beams from the George A. Lowe Company, and instructed said company to deliver them in front of his residence, where the walk was in course of construction. The beams were delivered in accordance with the directions given at about 4:30 o'clock p. m. of that same day, and were laid on the edge of the gravel and parallel with the street. These beams and the other building material were left in the street, where they had been unloaded and deposited, until the following day, when they were used and placed in the sidewalk by defendant Bucher. About midnight of the same day on which the material was placed in the street plaintiff, while driving along Washington avenue with a horse and buggy, ran upon the pile of gravel, and, in turning so as to avoid further contract with the obstruction, the horse stepped on the two iron beams and became frightened and started to run. Plaintiff was thrown from the

buggy and dragged several rods and received the injuries complained of. There were no guards or railings around this building material, nor were there any lights or warnings of any kind upon or near these obstructions. The plaintiff testified, and his testimony is corroborated by that of several other witnesses, that the night was very dark, and that it was next to, if not, impossible to see the obstructions. On this point he said: "It was very dark. There was no moon, . . . and the lights from the stores were all out, and I could not see the obstructions. . . . I got down on my hands and knees and found the gravel and beams." Prior to the accident one end of the beams was twice moved out into the street by wagons coming in contact with them. Between 11 and 12 o'clock that night one of these iron beams was displaced by a wagon coming in contact with it, and pushed or dragged so that one end extended diagonally from the gravel into the street and was replaced by a policeman. Soon after the accident the police department of Ogden city was notified that the beams referred to had been displaced and were obstructing the street, and the department immediately sent two policemen to the place where the accident occurred who moved the beams back against the gravel and left them in the position in which they were first deposited in the street.

McCARTY, C. J. (after stating the facts).

The complaint, after reciting the manner in which plaintiff's horse and buggy came in contact with the pile of gravel and iron beams referred to in the foregoing statement of facts, and that plaintiff was thrown out and dragged on the pavement, alleges "that plaintiff was greatly injured by reason thereof, that his right arm and right leg were badly bruised and sprained, . . . and that he was otherwise made sick, sore, and lame, and was thereby detained from his business for thirty days," etc. At the trial the following questions were asked plaintiff on direct examination: "How long after this accident before the injury to your arm was healed—before you recovered? How long was it after the in-

32 Utah—15

jury, Mr. Jones, before your knee, which was sprained, recovered? For how long were you unable to do any work after this accident? How long was it after the accident before you could perform you usual labor?" Objections were made and sustained to the first two questions, on the ground that they were immaterial; there being no allegation in the complaint of the extent of time it required his arm and knee to heal. And objections were made and sustained to the last two questions, on the ground that the allegation fixed the time at thirty days during which plaintiff was detained from his business. Plaintiff then asked leave to amend his complaint by striking out the word "thirty" and inserting the word "ninety," thereby making the complaint read that he was "detained from his business ninety days," but the court refused to permit the amendment. The rulings of the court excluding the evidence and denying the motion to amend are now assigned as error. We think the allegations of the complaint are sufficiently broad to admit proof of the extent and duration of plaintiff's injuries therein alleged, and that the court erred in sustaining the objections to the foregoing questions. We are also of the opinion, and so hold, that plaintiff's proposed amendment should have been allowed. The amendment did not raise any new issue, nor tend to interject any new or additional element into the case.

The next question presented is: Was there sufficient evidence tending to show that plaintiff received the injuries complained of because of the street having been placed and left in an unsafe condition by defendants Maule and Bucher, and that the city had notice of such condition to entitle plaintiff to have the case submitted to a jury? This question must be answered in the affirmative. The record shows that the sidewalk was being constructed by Bucher and Maule, and that the material with which the street was obstructed was there to be used in the sidewalk. And there is evidence from which a jury might well find that Maule had the iron beams placed in the street, and that the cement and other material was placed there by Bucher. On the morning after the accident the plaintiff met defendant Bucher and told him of his

injury. Bucher said he "thought all of his obstructions were put in good shape and didn't require lights." Plaintiff asked him why "he didn't have lights or signals to warn a man off with his team;" and he (Bucher) said "he didn't think they required it." James R. Cooper, a witness for plaintiff, testified in part as follows: "Am employed by George A. Lowe Company. Sold steel beams to George E. Maule, August 3, 1904, to be used in his building on Washington avenue. They were to be delivered in front of Carver's grocery. Received these instructions from George E. Maule. I think those beams were delivered as instructed." Austin A. Sumner, another of plaintiff's witnesses, testified: "I was foreman of the delivery department of George A. Lowe's in August, 1904; had immediate charge of the delivery of those iron beams in front of Carver building on August 3d. I received orders that they should be placed in front of Carver's grocery store. That order came to me in the due course of business. They were placed as directed; that was at 4:30 p. m." It was admitted that the iron beams and the other obstructions referred to were left over night in the street unguarded, and without lights or other signals to warn those who might have occasion to use the street during the night of their existence and location in this public thoroughfare.

But it is argued on behalf of Ogden City that there is no evidence in the record tending to show that the city had actual notice of the existence of the obstructions, or that they had been on the street a sufficient length of time to raise a *presumption that the city had notice of their existence and* unguarded condition. If this were a case in which the city or parties doing the work had, in the first instance, put the proper barriers and signals to prevent injuries to those who might have occasion to travel the street during the nighttime, and the guards or signals had been removed by some third party, or other independent agency, then, in that event, the argument of counsel for the city, that it had not had a reasonable time in which to replace the guards and signals and thereby put the street in a reasonably safe condition after such removal, would have considerable force. But this is

not that kind of a case. The undisputed evidence shows that at the time of the accident the work of improving the sidewalk along the street had been in progress for a considerable length of time. And it further appears that the portion of the sidewalk for which the material in question was being used had been in course of construction for three days. And it may be reasonably inferred from the evidence that during the time the material was piled on the street for use in the construction of the sidewalk it was left at night unguarded and without lights or signals of any kind to warn the traveling public of its existence. Furthermore, the record shows that the place where the accident happened is in the very heart or center of the business district of the city. In the case of *Scoville v. Salt Lake City,* 11 Utah 60, 39 Pac. 481, it was said:

"The question of notice is not alone determined from the length of time a defect has existed, but also from the nature and character of the defect, the extent of the travel, and whether it is a populous or sparsely settled part of the city."

Under all the circumstances of the case, as disclosed by the evidence, we are of the opinion, and so hold, that the question of notice to the city, as well as the question of negligence on the part of all the defendants, were questions of fact for the jury to pass upon, and that the court erred in directing a verdict for defendants.

The judgment is reversed and a new trial ordered, with directions to the trial court to permit the parties to amend their pleadings should they so desire. Costs of this appeal are to be taxed against respondents.

STRAUP and FRICK, JJ., concur.