## ROBINSON v. SALT LAKE CITY.

No. 2273.   Decided January 4, 1912.   Rehearing Denied March 21, 1912 (121 Pac. 968).

MUNICIPAL CORPORATIONS—DEFECTIVE STREETS—NEGLIGENCE—QUESTION FOR JURY. In an action for injuries to a traveler on a defective street, evidence *held* to justify a verdict that an employee of the waterworks department of the city, lawfully digging an excavation in the street, negligently failed to fill it in a proper manner, and that the unsafe condition was due to his act, and not to the act of a trespasser.

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by John Robinson against Salt Lake City.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

See also 37 Utah, 520, 109 Pac. 817.

*H. J. Dininny* and *P. J. Daly* for appellant.

*E. A. Walton* and *Thurman, Wedgewood & Irvine* for respondent.

STRAUP, J.

This is an action to recover damages for alleged personal injuries. The alleged negligence and cause of injury are that

40 Utah 32

the city suffered and permitted an excavation to be and remain in one of the regularly traveled streets of the city which rendered the street dangerous and unsafe to travel, and that the plaintiff, in traveling the street with team and wagon, was by reason of the excavation thrown from his wagon and injured. A trial to the court and a jury resulted in a judgment for the plaintiff, from which the defendant appeals.

The principal complaint is that the court erred in refusing to direct a verdict in favor of the defendant upon the grounds that plaintiff's injury "was not caused by any act of negligence upon the part of the defendant," and that "the street at the place in question had been placed in a dangerous condition by somebody not connected in any way with the waterworks department of the city, or that of the city government." Upon these points witnesses for the plaintiff testified that on the 6th day of February there was a break in a service water pipe at the curb box. The break was reported to the waterworks department of the city, who owned the waterworks system, and who supplied the inhabitants of the city with water. On the next day, which was Sunday, an employee of the waterworks department made in the street, which was unpaved, an excavation four or five feet long, about two and one-half feet wide, and three or four feet deep, to the water main, to shut off the water so that the service pipe could be repaired. The weather "was sloppy," and the street "wet and slushy" and muddy. As testified to by one of the witnesses, the excavation was made "right in the rut of the wagon road where the wheels struck in the ordinary traveled portion of the street." The excavated dirt was so replaced, and the excavation so refilled, as to leave a hole or depression which filled up with water and mud. Four days after the excavation, and on the 11th, while the plaintiff was driving along the street in the evening about dusk with team and wagon, one of his horses stepped into the hole and floundered, and one of the front wheels of the wagon went into the hole to the hub, by reason of which the plaintiff was thrown from the wagon and was injured. Right after the accident one of the witnesses then present placed the blunted end of a

board about eight feet long, a foot wide, and an inch thick, into the hole to prevent other accidents. He testified that he had no difficulty in shoving the board into the hole to the depth of about two and one-half feet.

An employee of the waterworks department testified in behalf of the city that he made the excavation on the 7th, and, after shutting off the water, refilled the excavation and "made it solid" by tamping the loose dirt with his feet, and that he left the surface of the ground in a raised and round condition. He further testified that the ground where the excavation was made was frozen about eighteen inches deep and was dry; that he saw the place the next day and found it in the same condition as he left it; that he passed there the day before the accident and saw two men working at the curb cock trying to replace the broken "tailpiece," and that the water, which had been turned off by him, was then turned on; and that he saw the place the day after the accident "and saw that the hole had been dug open, and I saw a board in the hole, which was stuck in the hole. I could tell from the appearance of the ground that the hole had been dug open after I left it." Another witness, in the distribution department repairing mains, testified that, after the excavation was made, he passed over it, and found the surface of the ground there raised and in a round condition. These, and other witnesses, testified that, when water is turned off, under circumstances as here shown, no one is authorized to turn it on without permission from some one in the office of the superintendent of waterworks, and that no such permission was had, and, under the ordinances of the city put in evidence, no one is permitted to dig in the street for the purpose of repairing a service pipe without a permit from the superintendent or from some one in his office.

It is not contended that the digging of the street by the employee of the waterworks department was unauthorized. It is conceded that that was done under the express and direct orders of the city. But it is contended upon this evidence that it is indisputably shown that, after the employee of the city had dug the excavation and refilled it and left it in the

condition as testified to by him, some unknown person, a stranger to the city, on the day of the accident or the day before, without the knowledge or consent of the city, reopened the excavation and left it in a dangerous and unsafe condition, and that the city had neither actual nor constructive notice thereof. But we do not think that it is indisputably shown that the excavation was redug or reopened. The court properly left it to the jury for its determination whether the condition of the street, which confessedly was in an unsafe condition, was due to the conduct of the city's employee in failing to restore it to a reasonably safe condition, or to the acts and conduct of another without knowledge of or notice to the city. There was no direct evidence that another had redug or reopened the excavation. That fact rests entirely upon the testimony of the city's employee that the water had been turned on by some one without permission, and that the excavation had the appearance of having been redug. The testimony of this witness that, when he refilled the excavation, he "made it solid" and left the place in a good condition, and the conceded unsafe condition of the street at the place of the excavation at the time of the accident, were discordant. This inharmony was attempted to be explained by him on the theory that some unknown person redug or reopened the excavation after the witness had properly refilled it. Upon the evidence adduced, the jury had the right to believe and find that the testimony of this witness that he refilled the excavation in a proper manner and left the place in a reasonably safe condition was not true, and that the unsafe condition of the street was due to his negligence, and not to the acts of some supposed and unexplained trespasser or meddler. (*Styles v. Village of Decatur,* 131 Mich. 443, 91 N. W. 622; *Kennedy v. City of St. Cloud,* 90 Minn. 523, 97 N. W. 417; *City of Savanna v. Trusty,* 98 Ill. App. 277.)

The other questions raised we think are even less meritorious.

The judgment of the court below is affirmed, with costs.

FRICK, C. J., and McCARTY, J., concur.