## RAY v. SALT LAKE CITY.

No. 5840.   Decided June 22, 1937.   (69 P. [2d] 256.)

Rehearing Denied September 10, 1937.

*Fisher Harris,* City Atty., and *E. R. Christensen* and *Gerald Irvine,* Asst. City Attys., all of Salt Lake City, for appellant.

*E. C. Jensen* and *Robert B. Porter, Jr.,* both of Salt Lake City, for respondent.

MOFFAT, Justice.

On January 3, 1936, plaintiff, Julia A. Ray, filed her complaint against Salt Lake City, alleging the corporate capacity of the defendant, and, among other things, that on or about August 20, 1935, and for a long period prior thereto, the sidewalk opposite No. 115 on Kelsey avenue, a thoroughfare of the city, was and had been in an unsafe and dangerous condition, in that one section of the cement sidewalk was raised so that it was higher than the one immediately to the west of it; that the plaintiff, as she was proceeding easterly on the north side of Kelsey avenue at a place definitely indicated, at about 11:30 o'clock at night, the street at that place being unlighted, tripped over

or against the raised section of the sidewalk, stumbled and fell, and dislocated her shoulder and received other injuries, with resulting damage.

Negligence on the part of the defendant city is charged because of carelessness in maintaining or permitting the sidewalk to be in such dangerous and unsafe condition.

Claim was timely and properly presented to the city.

Demurrers to the original and to an amended complaint were interposed by the defendant which were overruled. The defendant by answer denied generally the allegations of the complaint and pleaded contributory negligence.

A trial was had before the court sitting with a jury. A verdict was returned by the jury in favor of plaintiff, and judgment entered accordingly. Motion for a new trial was filed, argued, submitted, and overruled. The trial court committed no error in overruling the general and special demurrers or denying defendant's motion for a directed verdict, nor in denying defendant's motion for a new trial.

We state thus briefly our conclusions as to these issues for the reason that in argument one dominating issue forms the basis of all of the arguments except as to one requested instruction to the jury. That issue presented is: In such case must plaintiff allege a specified difference in elevation of adjoining sections of a sidewalk, so that when alleged definitely such specified difference then submitted to the court an issue of law and the court must either say the specified difference is sufficient to make a prima facie case of negligent maintenance or not?

No suggestion is made that there is no evidence to support the verdict. The only conflict in the evidence relates to the difference in elevation of the adjoining sections of the sidewalk on Kelsey avenue where the accident occurred.

As is indicated by the long list of cases cited by respective counsel and from the decided cases, much has been written on all phases of the question. It was said in a similar case by this court that from the mere point of numbers the weight of authority was with the contention that less than

a specified difference in elevation of adjoining portions of a sidewalk was not sufficient to charge a municipality with the result of injuries received by one who fell by tripping while stepping from a lower to a higher section. The numerical weight of authority is now the other way. This court in discussing the matter in the case of *Shugren* v. *Salt Lake City*, 48 Utah 320, 159 P. 530, 533, refused to follow what was then recognized as the numerical weight of authority, and followed what appears to be the only course that could be followed. It was there said:

"This court is firmly committed to the doctrine that ordinarily the question of whether the maintenance of a particular defect in a street or sidewalk constitutes negligence on the part of the municipality is a question of fact for the jury."

The following cases are cited: *Jones* v. *Ogden City*, 32 Utah 221, 89 P. 1006; *Bills* v. *Salt Lake City*, 37 Utah 507, 109 P. 745; *Robinson* v. *Salt Lake City*, 40 Utah 497, 121 P. 968; *Sweet* v. *Salt Lake City*, 43 Utah 306, 134 P. 1167.

In the very nature of the situation it must be obvious that the courts ought not and cannot arbitrarily determine that the maintenance of a particular defect in a street or sidewalk does or does not constitute negligence. As a matter of law this statement is subject to the limitation that ■ when it is made to appear that the case is one upon which reasonable minds would not arrive at a different conclusion with regard to whether the maintenance of a particular defect in a sidewalk or street constituted negligence on the part of the municipality, the question may then be one of law; otherwise the issue is one of fact to be submitted to the jury. We think this is what the Shugren Case holds.

In the case of *Taylor* v. *Ogden City*, 61 Utah 455, 214 P. 311, 312, the Shugren Case is referred to as having settled the doctrine. The prior decisions of this court and cases from other courts are cited and reviewed, and upon the authorities the case of *Taylor* v. *Ogden City*, supra, says:

"A mere cursory examination of the Shugren Case will at once make clear that to permit the defect described by respondent and his witnesses to remain in the street cannot be declared not to have constituted negligence as a matter of law."

Whether a particular defect in a street or sidewalk is reasonably safe or dangerous for travel depends not always upon the matter of difference of elevation or depression, but upon all the surrounding circumstances. Under circumstances a step or steps may be maintained. We need not further attempt specifications. Needless to say also that the city is not an insurer. It is the duty of a municipal corporation, generally speaking, and as a matter of law, to use ordinary care and diligence to keep its streets and sidewalks in a reasonably safe condition for the ordinary uses to which they are subjected.

The evidence showed that the difference in elevation of the adjoining sections of the sidewalk had remained substantially as alleged for a period of about twelve years. The defect, having existed so long, in view of the location, should have attracted the attention of the city officers and caused them, in the exercise of ordinary care, to correct the defect. It was sufficient to constitute constructive notice that the defect might cause injury.

As to the actual difference in elevation of the adjoining sections there was not much difference of opinion or measurement. The elevation on the north side of the walk being about three-fourths to seven-eighths of an inch, and on the south side of the walk about one-fourth to three-eighths of an inch. We cannot say that the specified difference in elevation is so slight that a careful or prudent person might not reasonably anticipate danger from its existence, especially in view of the situation and other surrounding circumstances that might have a bearing upon the existing condition.

Opposing counsel have cited and referred in their briefs to many cases. Interesting and profitable as it might be to

do so, it would be an unnecessary diversion to attempt to read and distinguish all of them. Broadly speaking they all fall into two general classes; one class in which the defect has been, either by the court or the jury, held to be so slight as not to be actionable even though the same underlying principle governing the cases may have been recognized; the other, the matter has been held to be sufficient to go to the jury. The whole situation is summed up in a statement quoted in the case of *City of Tulsa* v. *Frye*, 165 Okl. 302, 25 P. (2d) 1080, 1082.

"It would be a serious inroad on the province of the jury if, in a case where there are facts from which negligence may be reasonably inferred, the judge were to withdraw the case from the jury upon the ground that, in his opinion, negligence ought not to be inferred; and it would, on the other hand, place in the hands of the jurors a power which might be exercised in the most arbitrary manner, if they were at liberty to hold that negligence might be inferred from any state of facts whatever."

To attempt to fix an arbitrary height or depth of irregularity applicable to all cases would be more intolerable than either. In the instant case the jury examined the walk at the scene of the accident.

Appellant contends that the trial court erred in failing to give the following requested instruction:

"You are instructed that the duty imposed on the defendant was to repair only such sidewalks as were so out of repair as to endanger persons passing thereon and that defendants are not liable for every defective sidewalk but only for such as are so out of repair as to endanger persons passing thereon and I instruct you that if you find from the evidence that the sidewalk where the plaintiff has testified that she was injured was not so out of repair as to endanger persons in ordinary health and of ordinary strength and with the ordinary control of their muscles and faculties while passing thereon, you must find for the defendant."

The foregoing instruction in substantially the same language was held to state the law in the case of *Taylor* v. *Manson*, 9 Cal. App. 382, 99 P. 410. If the instruction was

intended to direct the jurors' attention to a condition that the plaintiff, considering her age, was not in ordinary health or strength, and did not possess the ordinary control of her faculties and muscles, it is sufficient to say that in the instant case no such issue was before the court. Neither do we observe any necessity for particularity as to these "ordinary" conditions. The quoted requested instruction is directed to the fact that sidewalks must be kept in such state of repair as not to endanger persons, that is, the public generally, while passing thereon. The court, among other things, instructed the jury before they could find for plaintiff they must, among other specified things, find that the defect in the sidewalk was a dangerous obstruction, or caused the sidewalk not to be reasonably safe for the use for which it was constructed and maintained. The jury were instructed they were to consider the instructions as a whole, and when so considered we are of the opinion the appellant has no cause to complain.

Finding no error, judgment is affirmed. Respondent to recover costs.

LARSON, J., concurs.

WOLFE, Justice (concurring specially).

The difficulty of laying down some common-sense rule which will not impose upon cities virtually impossible financial and administration burdens, and at the same time make sidewalks reasonably safe for the public, is illustrated by the division in the cases and the shifting from one rule to another by certain of the states. The situation here presents a border-line case. It must be kept in mind that this case presents only the situation of an abrupt raise between the flagstones and not the situation where a rounded depression exists or any case of accumulation of ice or any hiatus in the flagstones or loose bricks or flagstones or holes, pitfalls or traps, or protuberances such as curb boxes or part of a water or gas system, or many of the other types of irregu-

larities, unevennesses, projections, obstacles, or protuberances which are involved in various sidewalk csaes.

I think the rule laid down in the case of *Shugren* v. *Salt Lake City*, 48 Utah 320, 159 P. 530, should be the overarching one. That is, I think it should generally be left to the jury to say whether the city was in fact negligent, but subject to the courts to determine in certain cases whether in law a case of negligence has been made out. And I think that should work both ways. If the difference in elevation of contiguous parts of a pavement was so great that no reasonable mind could say it was not dangerous and the condition existed such length of time that the city should have taken notice of it, the case should go to the jury with instructions to determine whether the condition actually had caused injury and the extent of the damages, subject to the instruction as to whether the pedestrian used the care required by the circumstances. On the other hand, if the raise is so slight that reasonable minds could not differ in a conclusion that it was one of the almost inevitable irregularities which must be expected and endured if we have sidewalks at all, I think the case should be withheld from the jury.

Shoes on feet in motion are designed to slip over small protuberances in the forward motion of the foot unless the toe end of the shoe should strike that protuberance at a certain point in that stroke of the foot. And in the light ordinarily the eye and foot co-ordinate unconsciously to avoid that. But even the slightest of raises in the flagstones or sections of a sidewalk may here and there cause a stubbing. Certainly, not every such result is actionable.

The difficulty is to fix precise bounds between raises, the maintenance of which in law constitutes negligence, and those which in law cannot so constitute negligence. I am unwilling at this time to set those limits. I think they must depend on locality, amount of use and travel, etc. I agree with the prevailing opinion that seven-eighths of an inch (we must take the evidence most favorable to plaintiff in

testing out the point whether minds could reasonably differ as to whether the condition constituted negligence) is an irregularity sufficiently great under the circumstances of this case to let the jury determine negligence. The evidence being that the plaintiff was on the inside of three walking abreast, there is sufficient evidence that she encountered this seven-eighths inch raise and not the receding raises as the curb was approached.

This is perhaps one of those rare cases where we should welcome from time to time a re-examination of the principle which we have applied hereto. If experience should reveal that we have by this rule cast a burden on the city beyond which it ought to assume, we may in the future have to set some arbitrary figure under which it can be said in law that there was not negligence. But, as at present advised, I think we should not at this time make such a rule. There are usually more factors than the amount of the raise that enter into the situation. There is the matter of the comparative amount of travel, the matter of whether it is a business or residence neighborhood, the matter of whether sparsely or solidly built up. The jury could on inspection note the latter. I am inclined to agree with the language used rather recently by the Pennsylvania court in *Kuntz* v. *City of Pittsburg*, 123 Pa. Super. 394, 187 A. 287, 289, reading:

"The decisions [of Pennsylvania] establish that an irregularity may be so slight that the court is required as a matter of law to say that such unevenness is not evidence of lack of reasonable care, but there is a shadow zone where such question must be submitted to a jury whose duty it is to take into account all the circumstances. To hold otherwise would result in the court ultimately fixing the dividing line to the fraction of an inch, a result which is absurd. The true principle was tersely stated by Judge Trexler in the case of *Shafer* v. *Philadelphia*, 60 Pa. Super. 256, as follows: 'What particular shallowness of depression in a sidewalk or street forms such a slight inequality in the surface, as to excuse its presence and release the city of liability therefor cannot be definitely stated. Each case must necessarily be determined by the surrounding circumstances and generally the matter must be left to the jury.' "

I cannot agree with the prevailing opinion that the requested instruction sought to infer that plaintiff had not ordinary health, strength or control or that it was meant or intended to have any reference to specific evidence in this case. The qualification that it must be so out of repair as to endanger persons "in ordinary health and of ordinary strength and with ordinary control of their muscles and faculties while passing thereon," is a part of the test of the city's negligence or lack of it. Certainly, a pavement would not have to be made so safe that every aged, decrepit, idiotic, or crippled person or person with locomotor ataxia or intoxicated could pass without danger of stumbling. This language was part of the test. But I think failure to give the instruction in the light of other instructions given was not prejudicial error. I concur in the results.

FOLLAND, Chief Justice (dissenting).

I cannot agree with the prevailing opinion for the reason that an inequality in the sidewalk of not more than seven-eighths of an inch is so slight that no careful or prudent person would reasonably anticipate any danger from its existence. To say that negligence may reasonably be inferred from the existence of such an unevenness in the walk would impose an insuperable burden on every municipality. The city is not required to maintain its sidewalks in as smooth and even a condition as the ordinary parlor floor. Many rugs on parlor or drawing room floors have a depth of from a quarter to seven-eighths of an inch, thereby causing a ridge of that height against which one might stumble. There is some point at which reasonable care ends and negligence begins. With an unevenness no greater than that testified to in this case, I am of the opinion we are on the side of reasonable care.

I am not disposed to question the doctrine of the Shugren Case, 48 Utah 320, 159 P. 530, or that of *Taylor* v. *Ogden City*, 61 Utah 455, 214 P. 311. In the Shugren Case the

inequality was more than two inches in height and in the Taylor Case the evidence showed a hole in the walk of from two to six inches in depth. Those defects were of such dimensions that a jury might reasonably conclude that the city was guilty of negligence in allowing them to remain after notice or their existence for a sufficient time from which notice could be implied. The court in the Shugren Case said:

"Of course there may be defects so light and unimportant * * * that a court might well say as matter of law that the maintenance thereof did not constitute negligence on the part of the municipality."

And again, referring to other types of defects:

"We feel constrained to add that it must be obvious to all that not every raise or projection in a street or sidewalk can be held objectionable."

The rule as to when a court may withdraw a case of this type from the jury is well stated in *City of Tulsa* v. *Frye*, 165 Okl. 302, 25 P. (2d) 1080, 1082, in quoting from the English case of *Metropolitan Ry. Co.* v. *Jackson*, 3 App. Cas. 197, part of which is quoted in the opinion of Mr. Justice MOFFAT. I quote the whole paragraph:

"The judge has a certain duty to discharge, and the jurors have another and a different duty. The judge has to say whether any facts have been established by evidence from which negligence may be reasonably inferred; the jurors have to say whether from these facts, when submitted to them, negligence ought to be inferred; and it is of the greatest importance in the administration of justice that these separate functions should be maintained, and maintained distinct. It would be a serious inroad on the province of the jury if, in a case where there are facts from which negligence may be reasonably inferred, the judge were to withdraw the case from the jury upon the ground that, in his opinion, negligence ought not to be inferred; and it would, on the other hand, place in the hands of the jurors a power which might be exercised in the most arbitrary manner, if they were at liberty to hold that negligence might be inferred from any state of facts whatever."

In the Frye Case the defect was about an inch in depth. The Supreme Court held the trial court should have directed

a verdict for the defendant. The judgment for plaintiff was reversed and the cause remanded with directions to dismiss.

I fear the decision as written would mean that this court will sustain the judgment in every case where a jury brings in a verdict on evidence of any raise in a sidewalk, no matter how slight, and that it is a jury question whenever the plaintiff alleges he slipped or fell by stubbing his toe on a sidewalk where the protuberance is of any height against which a toe might be stubbed. Here the defect is so slight and unimportant that the court ought to say "as matter of law that the maintenance thereof did not constitute negligence on the part of the municipality."

The judgment should be reversed and the cause remanded for dismissal.

HANSON, Justice (dissenting).

I concur in the views expressed by Mr. Chief Justice FOLLAND in his dissenting opinion.