### HARRIS v. CITY OF DETROIT.

MUNICIPAL CORPORATIONS — DEFECTIVE SIDEWALK — 1-INCH DEPRESSION.

A depression in a sidewalk occasioned by settling of 1 slab approximately 1 inch below the preceding slab did not constitute such a state of disrepair as to render municipality, within which such sidewalk was located, liable for damages incident to accident caused by such depression (CLS 1956, § 242.1).

SOURIS, OTIS M. SMITH, and ADAMS, JJ., dissenting.

Appeal from Wayne; Moynihan, Jr. (Joseph A.), J. Submitted April 4, 1962. (Docket No. 17, Calendar No. 49,239.) Decided September 10, 1962.

---

REFERENCES FOR POINTS IN HEADNOTE

25 Am Jur, Highways § 488.
Degree of inequality in sidewalk which makes question for jury or for court, as to municipality's liability. 37 ALR2d 1187.

Case by Eliza Harris against the City of Detroit for personal injuries sustained in fall on sidewalk on March 9, 1960. Cause dismissed on motion. Plaintiff appeals. Affirmed.

*Charfoos & Charfoos* (*Lawrence S. Charfoos,* of counsel), for plaintiff.

*Nathaniel H. Goldstick,* Corporation Counsel, *Alfred Sawaya* and *Andrew F. Valenti,* Assistant Corporation Counsel, for defendant.

KAVANAGH, J.     Plaintiff filed a declaration in the circuit court for the county of Wayne against defendant city of Detroit seeking to recover for damages growing out of injuries suffered when she allegedly tripped on a depressed sidewalk. Plaintiff alleged one of the slabs had settled into the ground approximately 1 inch below the preceding slab. Plaintiff based this action on the general highway law, as amended,* which provides for recovery of damages for injuries suffered upon any of the highways or streets in this State by reason of failure to keep such highway or street in reasonable repair.

Defendant city of Detroit appeared and filed a motion to dismiss stating:

---

* PA 1909, No 283, ch 22, § 1, as amended (CLS 1956, § 242.1 [Stat Ann 1958 Rev § 9.591]), reads as follows:

"Any person or persons sustaining bodily injury upon any of the public highways or streets in this State, by reason of neglect to keep such public highways or streets, and all bridges, sidewalks, crosswalks and culverts on the same in reasonable repair, and in condition reasonably safe and fit for travel by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, sidewalk, crosswalk or culvert, and whose duty it is to keep the same in reasonable repair, such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled, and to any person suffering damages by reason of such injury, just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction."

1. That the declaration failed to state a cause of action upon which plaintiff could recover from defendant city.

2. That on the face of plaintiff's declaration it appears the alleged defective sidewalk was approximately 1 inch below the other squares.

3. That no liability was imposed on the city, a municipal corporation, within the meaning of the statute, where anyone trips over a depression of less than 2 inches in depth.

The trial judge granted the motion to dismiss, apparently relying upon *Berry* v. *City of Detroit,* 341 Mich 702.

Plaintiff appeals, presenting one question:

Under CLS 1956, § 242.1 (Stat Ann 1958 Rev § 9.591), is a defect in a sidewalk wherein there is less than a 2-inch difference in levels, as a matter of law, nonactionable?

Plaintiff, both in her brief and in oral argument, admits that the rule in Michigan, supported by a long list of cases beginning with *Bennett* v. *City of St. Joseph,* 146 Mich 382, and culminating with *Berry* v. *City of Detroit, supra,* is that a depression in a walk which does not exceed 2 inches in depth will not render a municipality liable for damages incident to an accident caused by such depression. It is to be noted that most of these cases are unanimous opinions of this Court. Plaintiff would have us abolish this long-established rule of law without citing any reason or authority for the change in position. We find no reason for doing so.

The trial court was correct in granting the motion to dismiss. The order granting the motion to dismiss is affirmed, with costs in favor of defendant.

CARR, C. J., and DETHMERS, KELLY, and BLACK, JJ., concurred with KAVANAGH, J.

ADAMS, J. (*dissenting*).  The question in this case is whether or not this Court shall continue to hold as it has in the past that, under CLS 1956, § 242.1 (Stat Ann 1958 Rev § 9.591), a person cannot, as a matter of law, recover for injuries received because of a defect of less than 2 inches in a city sidewalk.

In 1893, *Bigelow* v. *City of Kalamazoo*, 97 Mich 121, was decided.  A description of the scene of the accident in that case and the reasons barring recovery as a matter of law, are set forth in the majority opinion:

"Portage street was unpaved, and in wet weather very muddy.  A streetcar track occupied the center of the street.  The walk was constructed of 2 planks, 4 inches thick, and from 12 to 16 inches in width. Between the planking a space of 16 inches, and a space outside of the plank, had been paved with cobblestones.  The rail in use by the street railway was the ordinary flat rail.  The planking had been raised above the street grade, so that at the car tracks the surface of the plank was 2 inches higher than the rail.  Short planks had been laid between the rails.  The ends of the planking were from 2 to 4 inches from the rail.  In this condition it was found that the planking, being above the rail, interfered with the scrapers attached to the street cars, and the city authorities caused the ends of the planks to be chamfered off, commencing back several inches from the ends.  Plaintiff's decedent stepped upon the beveled edge of 1 of these planks, her foot slipped, and she fell forward.  The court submitted the case to the jury, and a verdict for the defendant resulted.

"Upon the case made, defendant was entitled to a verdict, and it is unnecessary to consider the questions raised by plaintiff.  The alleged defect in the crosswalk was part of a plan adopted, which was rendered necessary by existing conditions.  Crosswalks are constructed for the convenience of pedestrians.

This walk was elevated of necessity; otherwise, it would have been of little value. The railway tracks were necessarily lower than the walk. It became necessary either to cut off the planks to allow for the use of the scrapers, or to chamfer them down so as to allow the scraper to pass over them. By adopting the other plan, another and greater danger would have been presented. In all of our cities these conditions present themselves. Even in our most prominent thoroughfares, paved in the most approved manner, curbs must be carried, and at the crossings they are from 2 to 6 inches higher than the pavement. The curb must be left bare, and inattentive people be liable to stumble, or, as is frequently done, a plank is placed upon an incline, upon which pedestrians carelessly advancing are liable to slip. In either case there is the minimum of danger. The walk is not absolutely safe, but it cannot be said that it is not in a reasonably safe condition. The same is true of nearly all of our alley crossings. Gutters are necessarily left for the passage of water. These crossings are not absolutely safe, but they may be reasonably so. Neither streets, sidewalks, nor crosswalks can be constructed upon a dead level. People are liable to stumble over a Persian rug upon a parlor floor, and streets cannot be made less dangerous than drawing rooms. Crosswalks upon our unpaved streets are usually constructed in this identical manner. Streetcar tracks are necessarily constructed at the street grade. Of necessity we must have gutters at these railway tracks. These gutters have abrupt edges, and must be wide enough to admit of wheels, the play of wheels, and the passage of the scraper, or the walk at the intersection of the tracks must be chamfered off, as in the present case. To have shortened the planking, leaving holes large enough to admit a foot, would increase the danger rather than diminish it. *The construction of a crosswalk in accordance with the requirements of the locality, adopting the means usually adopted, and which are best adapted for the convenience of the*

*public, cannot be said to be negligent construction.*
Cities are not required to keep streets in a condition
absolutely safe for travel.   A crosswalk must be
reasonably safe; reasonably safe in view of the pur-
pose for which it is constructed, the necessary uses
of the street, and all the varying conditions." (Em-
phasis supplied.)

The most significant thing about the majority
opinion of the Court is the italicized portion.   Under
the conditions existing at that time, the city had
constructed a walk that would cause the minimum
amount of danger, other known and available meth-
ods of construction being likely to be more danger-
ous.   One Justice dissented, agreeing with the cir-
cuit judge that the condition raised a question for
the jury as to whether or not the walk was a reason-
ably safe one.

Prior to this case, in the case of *Sebert* v. *City of
Alpena,* 78 Mich 165, the duty of cities to keep their
streets in reasonable repair was affirmed by this
Court and it was held that the question of whether
or not the duty had been performed was for a jury,
taking into account all of the circumstances, such
as the time of the day or night, the location and
size of the defect, and any other of the facts or cir-
cumstances surrounding the accident.

However, following the decision in the *Kalamazoo
Case,* the proposition gradually hardened into a
rule of law that where a defect in a walk was less
than 2 inches in depth, the walk would be considered
to be safe and the city free from negligence.   The
process is worth noting.   In *Weisse* v. *City of De-
troit* (1895), 105 Mich 482, 484, 485, it was said:

"In cities having many miles of walks it would be
an utter impossibility to make these walks absolutely
safe, and the legislature did not intend to impose that
duty upon municipalities by this act, whatever con-

struction the act of 1879* may have had. It would require an army of men in the city of Detroit to do this. Inspectors are not expected to carry around with them a smoothing plane or an adz to plane or hew down every small protuberance against which people might stumble and fall. The fact that this plank was not nailed down does not seem to have caused the injury. It was the same as if it had been nailed, but was 1–1/2 or 2 inches above the other, so that the question is squarely presented whether such a rise is a defect in the walk so that it is not reasonably safe. While not desiring to relieve municipalities from the duties and responsibilities fairly cast upon them by this act, we should be careful not to cast a burden upon them which it was not the intent of the legislature to create."

In the year 1899, in the first cement sidewalk case —*Jackson* v. *City of Lansing*, 121 Mich 279— it was held that because cement sidewalks may, by freezing and thawing, become broken, or, by constant travel, may wear through the outer crust and into the grouting, a defect of about 1–1/2 inches would be no greater obstacle to reasonably safe travel than the rise in the walks which had been involved in previous cases before the Court. *Weisse* v. *City of Detroit, supra; Yotter* v. *City of Detroit,* 107 Mich 4; *Shietart* v. *City of Detroit,* 108 Mich 309.

By 1906, in *Bennett* v. *City of St. Joseph,* 146 Mich 382, the Court abandoned an examination into the facts of the particular case and disposed of a claim for damages involving a depression from 1–1/2 to 2 inches in depth by saying:

"This court has repeatedly held that depressions equal to, and deeper than, this, and elevations constituting as great, or greater, obstructions than this

---

* PA 1879, No 244 required "good repair, so that they shall be safe and convenient for public travel at all times." The statute then in force, PA 1887, No 264, employed the term "reasonable repair."

depression, do not constitute negligence on the part of municipalities."

Recently in *Berry* v. *City of Detroit,* 341 Mich 702, that rule of law was upheld even though the Court recognized that the rule has been criticized. *Parker* v. *City and County of Denver,* 128 Colo 355 (262 P2d 553, 37 ALR2d 1177).

Mr. Justice KAVANAGH has correctly stated the present status of this judge-made rule of law. Under the long line of decisions of this Court, if the rule of *stare decisis* is to be applied, an order granting the motion to dismiss and affirming the trial court should be entered. However, this judge-made rule of law, perhaps proper when it was conceived, is applicable to other times and other conditions which have long since faded from our present Michigan scene of superhighways, supermarkets, and supercities.

In *Bricker* v. *Green,* 313 Mich 218 (163 ALR 697), the circumstances are set forth under which a rule of law determined by this Court might appropriately be re-examined and overruled. There is no need to repeat those circumstances. However, the words of Mr. Justice Cardozo, quoted in *Bricker,* pp 234, 235, do bear repetition:

" 'That court best serves the law which recognizes that the rules of law which grew up in a remote generation may, in the fullness of experience, be found to serve another generation badly, and which discards the old rule when it finds that another rule of law represents what should be according to the established and settled judgment of society, and no considerable property rights have become vested in reliance upon the old rule. It is thus great writers upon the common law have discovered the source and method of its growth, and in its growth found its health and life. It is not and it should not be

stationary. Change of this character should not be left to the legislature.

"'If judges have woefully misinterpreted the *mores* of their day, or if the *mores* of their day are no longer those of ours, they ought not to tie, in helpless submission, the hands of their successors.' "*

The days when walks are constructed of "2 planks, 4 inches thick, and from 12 to 16 inches in width," with a space of 16 inches between the planking and the space outside the plank paved with cobblestones are no longer any more extant than the horse as a usual means of transportation. The present rule serves only to insulate municipalities from what may well be, in given circumstances, proper responsibility under the statutes "to keep * * * sidewalks * * * in reasonable repair, and in condition reasonably safe and fit for travel." CLS 1956, § 242.1 (Stat Ann 1958 Rev § 9.591). The correct rule was enunciated in *Sebert* v. *City of Alpena, supra,* wherein the Court held that the necessities of travel must be examined in a given case and that if there is a question as to whether or not there was a dangerous condition, it should be submitted to the jury under proper instructions from the court.

In *Beach* v. *City of Des Moines,* 238 Iowa 312 (26 NW2d 81), the Iowa supreme court held, in a case involving a depression of about 1-1/2 to 2-1/2 inches, that the trial court erred in granting defendant city's motion for directed verdict. The court said (p 337):

"The height of an elevation or the depth of a depression are not decisive determinants on the question of liability in cases of this kind."

See, also, *Alber* v. *City of Dubuque* (1960), 251 Iowa 354 (101 NW2d 185).

---

* William L. Storrs Lectures before the Law School of Yale University in 1921.—Cardozo, The Nature of the Judicial Process, pp 151, 152.

In *Loughran* v. *City of New York,* 298 NY 320 (83 NE2d 136), the court made this cogent comment in reversing a judgment for the city:

"For the past 20 years at least, this court has declined to recognize any such principle as that urged by the city.  On the contrary, we have held that there is no rule that the liability of a municipality in a case of this sort turns upon whether the hole or depression, causing the pedestrian to fall, is 4 inches—or any other number of inches—in depth or constitutes 'a trap'.   *   *   *   As we but recently observed, there is no requirement that 'a hole in a public thoroughfare   *   *   *   be of a particular depth before its existence can give rise to a legal liability.'  *Wilson* v. *Jaybro Realty & Development Co.,* 289 NY 410, 412 (46 NE2d 497, 498).  A municipality's liability depends on whether or not, having in mind the circumstances of each case, it has neglected and failed to keep its public thoroughfares—whether the sidewalk of a street or the pathway in a park—in a condition reasonably safe for pedestrians."

In *Parker* v. *City & County of Denver, supra,* prior Colorado decisions holding that depressions or elevations of specified depths or heights constituted actionable negligence *per se* were overthrown.  The elevation in question was from 1 to 2 inches.  After reviewing the authorities, the court said (pp 360, 361):

"We believe it improper and error for a court to undertake to determine actionable negligence by a fraction of an inch for if the depression in *City of Colorado Springs* v. *Phillips,* 76 Colo 257 (230 P 617), is held to be good law, then if the depression or elevation is 2 inches or less there is no actionable negligence, whereas, if it is a fraction of an inch over 2 inches it may be actionable and require a jury's determination of negligence.  This is an absurd situation, and we cannot subscribe thereto.  It has

been announced in many decisions, some of which we shall cite hereinafter, that each case necessarily must be determined by the surrounding circumstances, and generally the matter must be left to a jury."

For other decisions see, also: *Blasick* v. *City of Yakima* (1954), 45 Wash2d 309 (274 P2d 122); *Ray* v. *Salt Lake City* (1937), 92 Utah 412 (69 P2d 256, 119 ALR 153); *Stratton* v. *City of Kansas City, Missouri* (Mo, 1960), 337 SW2d 927; *McKay* v. *City of Atlanta* (1950), 80 Ga App 797 (57 SE2d 432); *City of Louisville* v. *Verst* (1948), 308 Ky 46 (213 SW2d 517); *Poppen* v. *City of Watertown* (1952), 74 SD 402 (53 NW2d 616); *Reeves* v. *City of Springfield* (1960), 111 Ohio App 387 (171 NE2d 178); *Rudd* v. *Village of Bovey* (1958), 252 Minn 151 (89 NW2d 689).

The decision of the trial judge should be reversed and the case remanded for further proceedings in accordance with the usual and familiar principles applicable where a claim of negligence is involved. If upon a careful consideration of all the facts and circumstances, it is the opinion of the trial judge that, as a matter of law, no negligence existed on the part of the city, then, he should so rule and direct a verdict for the defendant. On the other hand, if under all the facts and circumstances of the case, it appears that there is a question as to whether or not the city was negligent, then such question should be submitted to the jury for its determination.

SOURIS and OTIS M. SMITH, JJ., concurred with ADAMS, J.

BLACK, J. (*concurring*). This is not a case where, by a nonunanimous and nonmature decision challenged at the bar, a standing statute is shown as having been misconstrued and misapplied. An ex-

ample of that kind of judicial blunder was examined and set right in *Park* v. *Employment Security Commission,* 355 Mich 103. Here a 70-and-more-year-old statute, which by its terms created the very right of action this plaintiff pleads, has been construed by a long series of unanimous decisions as denying such right where the pleader is unable to allege and prove a violation of what lawyers have come to know as the "2-inch rule." The sole question is whether any "cogent circumstances" are disclosed, or may be judicially noticed, which might lead us to depart from that which was settled so many years ago. I perceive none, and so would stand by the general rule which is applicable to *stare decisis* in the field of statutory construction distinguished from that of the common law. Such general rule appears in 14 Am Jur, Courts, § 66, pp 287, 288. It was the subject of some little debate in the *Park Case, supra.*

Stressed for special emphasis is the fact that we are asked to overrule unanimous cases construing an unamended statute; not a case or line of cases announcing a rule of the common law. As to the latter a court of final appeal has a duty as well as a license; that of tending with care to the sustenance and growth of law made not and amended not by appointed legislative bodies. A prominent instance was *Bricker* v. *Green,* 313 Mich 218 (163 ALR 697) and the discourse of Mr. Justice Cardozo found therein. That great writer was not discussing *stare decisis* in today's context when he wrote what we find quoted in the *Bricker Case.* He was treating the rightful application of *stare decisis* to the *common law* and, immediately following such quotation, supplied 2 illustrations of *common-law* rules which, to him, warranted judicial change. One was the "rule of the common law that a surety is discharged from liability if the time of payment is extended by contract between the principal debtor and the creditor

without the surety's consent." (p 152.) The other was the "rule of the common law that a parol agreement, though subsequently made, is ineffective to vary or discharge a contract under seal." (p 155.)

I prefer to take today's text from an earlier chapter (Nature of the Judicial Process, Cardozo, p 129):

"In countless litigations, the law is so clear that judges have no discretion. They have the right to legislate within gaps, but often there are no gaps. We shall have a false view of the landscape if we look at the waste spaces only, and refuse to see the acres already sown and fruitful. I think the difficulty has its origin in the failure to distinguish between right and power, between the command embodied in a judgment and the jural principle to which the obedience of the judge is due. Judges have, of course, the power, though not the right, to ignore the mandate of a statute, and render judgment in despite of it. They have the power, though not the right, to travel beyond the walls of the interstices, the bounds set to judicial innovation by precedent and custom. None the less, by that abuse of power, they violate the law."

Returning finally to the premises upon which it is said we should overrule, it is pointed out that concrete sidewalks have replaced wooden sidewalks since the turn of the century, and reference is made to "other conditions which have long since faded from our present Michigan scene of superhighways, supermarkets and supercities." I do not glean the relevance of these "other conditions," yet would gently suggest that there is indeed another modern and possibly overlooked "condition" which has a direct bearing on questions of duty and risk occasioned by walking on any kind of a sidewalk, wooden or concrete, split or broken, young or old. .

In the days of old, so we are told, milady walked with sturdy shoes and serviceable heels, designed for

safe ambulation over those wooden sidewalks and other less stable municipal footings. Now, speaking only as a discreet and respectful observer, I marvel that she is able to stay upright on the newest and best of walkways, wooden (we still have them) or concrete, as those spikes called heels get longer and sharper. No, Brothers, there is no change of condition or risk suggesting overthrow of the 2-inch rule. There is a change, and an even greater risk, over which city fathers have and will have no control whatever. Such are not of the kind which lead courts to overrule earlier decisions.

I concur in affirmance.