[No. 28353. Department One. September 5, 1941.]

ANNE B. C. FRITSCHE, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*[1]

[1] Reported in 116 P. (2d) 562.

*Adams & Clark,* for appellant.

*A. C. Van Soelen* and *John A. Logan,* for respondent.

MAIN, J.—This action was brought to recover damages for personal injuries. The cause was tried to the court, without a jury, and resulted in findings of fact, from which the court concluded that the defendant city had not been negligent. From the judgment entered dismissing the action, the plaintiff appealed.

The facts will only be stated in so far as it appears to us to be necessary in order to present what we deem to be the controlling question. The accident for which recovery was sought happened at the intersection of Federal avenue and east Roy street, in the city of Seattle. East Roy street extends east and west, and Federal avenue extends north and south. On the south side of this intersection are two yellow strips, each of which is twelve inches wide, and the distance between them is nine and one-half feet. What is called the Lowell school is located at or near this intersection, and the crossing is referred to as a school crossing.

At about twelve o'clock noon on November 13, 1939, the appellant approached the intersection from the east on the north side of east Roy street. When she reached the intersection, she crossed to the south side in a rather diagonal direction. As she stepped on the north strip with her right foot, she slipped, and her left ankle struck the curb and was seriously fractured. It was for this injury that recovery was sought.

Aside from the appellant, three witnesses testified that they had slipped upon the same strip, and that the strip was very slippery. One of these witnesses

testified that it had the appearance of being rather new. These strips had been repainted, or lacquered, as the engineer testified, on August 24, 1939. It was the practice of the city to repaint the school crossings before the opening of the schools in September of each year.

One of the appellant's witnesses, who visited the intersection on December 5th after the accident, testified that he tested the surface of the painted strips with his foot, "and I likewise tested the surface of the pavement upon which they were painted, and I found that the paint stripes were slippery"; that at the time of his visit the painted strips were dry; that they were "very slick and slippery"; that the pavement was not slippery; that he had, since the 5th day of December, referring to similar strips, "tested hundreds of them since the time I first went up there on December 2nd [5th], and I have never found any other slippery traffic strips"; that the paint on the strips in question appeared to be fresh; that, at the time of the trial, the city was using white strips instead of yellow; and that these were not slippery, as were the yellow strips.

An engineer, who was employed by the respondent in the engineering department, traffic division, was called by the city. He testified that he had quite a little to do with painting the crossing strips; that it is usual to repaint them just prior to the opening of school; that it takes the strips from three to twenty minutes to dry, depending upon the condition of the weather; that, after it has once dried, it remains permanently in that condition; that the strips are for the purpose of regulating the movement of pedestrians through an intersection; that there are approximately three hundred school crossings, painted in the same way; that, aside from these, there are approximately seven hundred crossings in the city, painted with the

same color, though these have narrower strips, more of them, and they are placed closer together; that the engineering department has never had any complaints from anyone who claimed to have slipped and been injured on any of the crossing strips, either on the school strips or the others; and that, as to slipperiness, there was no difference between the yellow strips and the white strips.

The respondent called another witness who had been the claim agent for the city of Seattle for many years, and that witness testified that, so far as he knew, prior to the claim filed in this case, no one had ever filed a claim for damages on account of having slipped or fallen upon one of the yellow strips.

One of the witnesses called by the appellant stated, on cross-examination, that hundreds of children, when school was in session, passed over the crossing here involved daily, and he had never seen one of them slip or fall.

■ It is hardly necessary to say that a city is not an insurer of the personal safety of everyone who uses its public walks. Its duty is performed when it keeps them reasonably safe for use for those who use them in the exercise of ordinary care. *Grass v. Seattle,* 100 Wash. 542, 171 Pac. 533. A test, which is sometimes applied to determine whether a city has performed its duty, is whether a reasonably cautious man, having the duty to preserve and repair the sidewalks, would or would not consider a particular defect as one where pedestrians might be injured. Each case must rest upon its own facts and be determined accordingly. *Kennedy v. Everett,* 2 Wn. (2d) 650, 99 P. (2d) 614.

■ When an accident happens by reason of some defect which was not reasonably to be anticipated and which, according to common experience, was not

likely to happen, the city "is not chargeable with negligence." *Beltz v. Yonkers*, 148 N. Y. 67, 42 N. E. 401; *Remesz v. Glasgow*, 95 Mont. 595, 28 P. (2d) 468. In each of the opinions in those cases, numerous authorities are cited in support of the rule stated.

Cases involving the matter of a coal hole, or other holes in the sidewalk over which a metallic cover has been placed and which metallic cover has worn smooth and slippery, or cases in which the city had permitted grease to accumulate on a street or sidewalk, have little, if any, analogy to the case which we are now considering.

While the evidence of the appellant says that the strips were very slippery, the trial court, in its findings, did not use the word "very," but simply that at the time of the accident the strips were "wet and slippery." If it is necessary for one to use a foot in order to determine whether a strip is slippery or not, it would seem that the city could not reasonably be called upon to inspect all of the strips at the school crossings without any knowledge or report by anyone to it of a bad condition in a strip.

Whether the white strips were less slippery, when wet, than the yellow is wholly immaterial in this case. There is no evidence as to the reason why the city changed from yellow to white.

We are of the opinion that this case falls within the rule above stated, to the effect that, when an accident happens which could not be reasonably anticipated and which, according to common experience, was not likely to happen, the city is not chargeable with negligence.

The judgment will be affirmed.

ROBINSON, C. J., BLAKE, STEINERT, and DRIVER, JJ., concur.