[No. 31555. Department Two. April 12, 1951.]

LUIEL J. JOHNSON et al., *Appellants*, v. THE CITY OF ILWACO, *Respondent.*[1]

[1]Reported in 229 P. (2d) 878.

*Wilkinson & Langsdorf* (*Bernard B. Kliks,* of counsel), for appellants.

*Preston, Thorgrimson & Horowitz,* for respondent.

GRADY, J.—This action was brought by Luiel J. Johnson and Mettie B. Johnson against the city of Ilwaco to recover damages for injuries claimed to have been sustained by Mrs. Johnson as a result of the condition of a sidewalk maintained by the city. The case was tried before a jury. The plaintiffs were awarded a verdict. The court granted the motions of defendant for a judgment notwithstanding the verdict and for a new trial. The plaintiffs have taken an appeal. In this opinion we shall treat Mrs. Johnson as though she were the sole appellant, and shall refer to the city as respondent.

There is evidence in the record which, if accepted by a jury, would sustain the finding of the following facts: Ilwaco is a city of the fourth class. First street runs north and south and intersects with Spruce street, which runs east and west in the business part of the city. On the east side of North First street, there is a curb and cement side-

walk about ten feet in width. On the northeast corner of the intersection is a drug store. The entrance to the street is by a door placed diagonally across the corner. On the evening of January 31, 1949, appellant parked her car by the east curb on North First street a short distance from the intersection. When she came from the drug store she turned to her right and moved in a somewhat diagonal direction across the sidewalk towards her parked car. A few feet north of the drug store entrance, there was an expansion joint in the sidewalk extending east and west. The sidewalk immediately north of the joint had settled, making an offset extending from the curb at least half way its width. The maximum depth of the depression between the two sections of the sidewalk was 1¼ inches. About twelve inches from the outer edge of the curb a hole two inches in diameter had been made at the joint for the insertion of a flag pole. When the hole was drilled it was lined with a piece of metal pipe, but such pipe was not in place at the time of the accident. The edge around the hole was broken and jagged.

Appellant stepped on the offset with her left foot; as she did so her ankle turned and she started to fall with a twisting motion of her body. The heel of her left foot became caught in the flag pole hole and she fell into the street. Appellant was wearing oxford shoes with about a two-inch heel. She did not recall having passed over the offset in the sidewalk prior to the occasion of the accident, but stated if she did she had not observed it or the flag pole hole. When testifying, she illustrated her movements and indicated on exhibits how and where events happened. Not all of this is portrayed by the printed page, but it was of such a character as to be of aid to the jury in reaching its conclusions on the issues of contributory negligence and proximate cause.

We find nothing in the record to indicate the precise grounds upon which the court based its order granting the motion for a judgment notwithstanding the verdict, except the following: Respondent moved for a directed verdict

upon the ground that no negligence on its part had been shown, and made reference to the case of *Grass v. Seattle,* 100 Wash. 542, 171 Pac. 533. The trial judge stated he would overrule the motion, but would give the question raised serious consideration if it was renewed on a motion for a judgment notwithstanding the verdict, and expressed serious doubt that the case should be allowed to go to the jury. We accept the statement of respondent in its brief with reference to the questions decided by the court and which constituted the basis of the judgment.

■ In our approach to the question whether the court should have granted the motion for a judgment notwithstanding the verdict, we must be guided by the tests prescribed by such of our later cases as *Omeitt v. Department of Labor & Industries,* 21 Wn. (2d) 684, 152 P. (2d) 973; *Severns Motor Co. v. Hamilton,* 35 Wn. (2d) 602, 214 P. (2d) 516, and *Hines v. Cheshire,* 36 Wn. (2d) 467, 219 P. (2d) 100. In our statement of facts, which we believe a jury would have been justified in finding, we have viewed the evidence in a light most favorable to appellant and have drawn such inferences from the evidence as we consider permissible.

The respondent contends that inasmuch as the jury, in answer to a special interrogatory, found that the maximum depth of the depression or offset between two sections of the sidewalk was $1\frac{1}{4}$ inches, it follows, as a matter of law, that it was not negligent with reference to the maintaining of the sidewalk in a reasonably safe condition for ordinary use by pedestrians. Reliance is placed upon *Grass v. Seattle,* 100 Wash. 542, 171 Pac. 533. We expressed the opinion in that case that an offset in a sidewalk of $1\frac{1}{8}$ inches on the extreme inside thereof and tapering to nothing at the outside curb was such an inconsequential defect that the city could not be held negligent for suffering it to remain therein. That sidewalk was eight feet wide. The exact location of the part of the walk over which the injured person tripped does not appear in the evidence. The extent of the offset depended on where the pedestrian stepped,

and it is fair to infer that it was somewhat less than the 1⅛-inch depth at the inner side of the eight-foot sidewalk. If the pedestrian had been near the outer edge, the extent of the offset would have been slight. The court considered that, if the pedestrian had passed over the walk many times and did not know of the existence of the defect, as she stated, and if the break was not observable unless one "looked right at the spot as you came down," the defect must have been inconsequential.

We cannot believe from a reading of the opinion that this court intended to adopt a fixed rule that a city could never be held liable if offsets in sidewalks did not exceed 1⅛ inches. We are asked by appellant to so treat the *Grass* case, and then to say that an additional ⅛ inch should be governed by the same rule. If we do so we might just as well add another ⅛ inch, and thus never know where to stop. The *Grass* case must be regarded to a great extent as in a class by itself, and we do not feel that its doctrine should be extended beyond the actual situation then before the court.

We have examined the case of *Sullivan v. Butte,* 104 Mont. 225, 65 P. (2d) 1175, cited by respondent, and find the defect in the sidewalk consisted of a band around a coal hole cover, which projected above the surface, at least on one side, ⅛ of an inch. The court decided that this was such a slight defect that reasonably prudent men could not have anticipated that it was likely to cause accident. A contrast to that case is *Ray v. Salt Lake City,* 92 Utah 412, 69 P. (2d) 256, 119 A. L. R. 153, to which the annotation cited by respondent is appended. In this case, the offset in the sidewalk ranged between ¼ of an inch on one side to ⅞ of an inch on the other. The court was of the opinion that it could not be said as a matter of law that such a difference in the elevation of adjoining sections of a sidewalk was so slight that danger to a pedestrian from its existence might not reasonably have been anticipated.

We can conceive of a situation where an offset in a sidewalk may be so great that a court would be justified in

holding as a matter of law that the city should reasonably have foreseen and anticipated pedestrians might sustain injury, and that such city had failed to keep the sidewalk in a reasonably safe condition for ordinary use by them. On the other hand, the defect might be so slight that the court properly could hold the converse to be true. Between these two extremes there is necessarily a twilight zone where such questions are for a jury to determine upon proper instructions from the court. The entrance to this zone either way would necessarily be nebulous, and there might be much room for a difference of opinion. The exact extent of the offset is not the only factor to be considered. The nature and character of the sidewalk, its location, the amount of travel over it by pedestrians, the extent to which the presence of the offset would ordinarily be seen or observed by travelers on the sidewalk, and many other conditions which might exist, all have to be taken into consideration. In those cases where reasonable minds can differ, the questions whether an offset in a sidewalk is of such a character that danger to a pedestrian from its existence may reasonably be foreseen and anticipated by the city, and whether in suffering it to remain the city had kept and maintained such sidewalk in a reasonably safe condition for ordinary use by pedestrians, are for the jury to determine. The evidence adduced justified the court in submitting the case to the jury. The motion for judgment notwithstanding the verdict should have been denied.

The guiding principles to be applied in this class of cases are set forth in such of our cases as *Lewis v. Spokane*, 124 Wash. 684, 215 Pac. 36; *Kennedy v. Everett*, 2 Wn. (2d) 650, 99 P. (2d) 614; *Fritsche v. Seattle*, 10 Wn. (2d) 357, 116 P. (2d) 562. The annotation in 119 A. L. R. 161 contains many cases where courts have decided that it must be held as a matter of law that the inequalities in sidewalks were so slight and inconsequential that the municipality should not be held liable with respect thereto, and also those cases in which courts have decided that whether they were of such a character as to constitute a want of due care in suffering them to exist was for the jury to determine.

■ The courts are in substantial accord as to the duty of a city with respect to its public walks, to which we gave expression in *Fritsche v. Seattle*, 10 Wn. (2d) 357, 116 P. (2d) 562, as follows:

"It is hardly necessary to say that a city is not an insurer of the personal safety of everyone who uses its public walks. Its duty is performed when it keeps them reasonably safe for use for those who use them in the exercise of ordinary care. A test, which is sometimes applied to determine whether a city has performed its duty, is whether a reasonably cautious man, having the duty to preserve and repair the sidewalks, would or would not consider a particular defect as one where pedestrians might be injured. Each case must rest upon its own facts and be determined accordingly."

The respondent argues that, even if it be assumed there was negligence with respect to the 1¼-inch offset, any relation between this difference in elevation and the fall of appellant must rest upon speculation and conjecture. The theory of respondent seems to be that if appellant had been walking from north to south she might have either caught her heel or stubbed her toe on the raised part of the sidewalk, but, as she was traveling in the other direction, no claim can reasonably be made that either event occurred. Respondent contends that it was physically impossible for appellant to have tripped, and that to conclude from her testimony she stepped on the offset and lost her balance one must again indulge in speculation and conjecture. We considered this subject in *Frescoln v. Puget Sound Traction, L. & P. Co.*, 90 Wash. 59, 155 Pac. 395, and said:

"Speculation and conjecture, when used in this connection, mean the same thing. The cause of an accident may be said to be speculative when, from a consideration of all the facts, it is as likely that it happened from one cause as another. As soon as the balance of possibilities is broken, the jury is put to the burden of weighing the evidence."

■ In this case there were no possibilities to balance against each other. The testimony of appellant and the surrounding circumstances indicated how her fall occurred. One of the witnesses called by her stated:

"She just walked out of the corner drugstore, came around the corner there and she slipped and fell. I don't know what she slipped on."

The part of the statement made that appellant slipped and fell was a conclusion of the witness. No claim is made that the sidewalk was slippery. There was claimed but one cause of appellant falling. The jury had the right to accept or reject the evidence in relation thereto. There was no occasion for speculation. Respondent also urges, in this connection, there was no substantial evidence that the flag pole hole near the curb had anything to do with appellant continuing to fall after turning her ankle when she stepped on the offset, and to connect the two factors one must further indulge in speculation. The testimony of appellant was to the effect that when she lost her balance by stepping on the offset she attempted to regain it, and in so doing the heel of her shoe caught in the hole. The jury had the right to infer and conclude that the combination of the offset and the flag pole hole caused appellant to lose her balance and fall.

The final argument of respondent is that there was no evidence showing that it had either actual or constructive notice of the existence of the flag pole hole in the sidewalk, or as to how it happened to be there; also that the claim filed with respondent by appellant was not sufficient to include the flag pole hole, but was limited only to the offset. The record indicates that the flag pole hole was one of many that had been drilled in the sidewalk for use by the American Legion on days of patriotic celebration. The photographs introduced in evidence show that the flag pole hole was in the offset.

When the location of the offset and flag pole hole was shown to be in the main business part of the city, the jury was justified in drawing an inference that its officers had actual knowledge of their existence and condition; also from the direct and circumstantial evidence, the jury could conclude that they had existed for a sufficient length of time so that respondent had constructive notice thereof. The claim filed by appellant set forth that the defect in the

sidewalk consisted of a raised section thereof and a broken seam. Inasmuch as the hole is in the seam and a part of it, it was sufficient that the claim refer to the seam as being the defect.

The court entered a general order granting respondent's alternative motion for a new trial. We must therefore assume that the motion was granted in the exercise of the discretion of the court. In such a case, our inquiry is limited to a determination of the question whether the evidence was sufficient to take the case to the jury, and, unless we can say that the verdict of the jury was, as a matter of law, the only verdict that could be rendered, the order granting a new trial must be affirmed. *Henry v. Larsen,* 19 Wn. (2d) 690, 143 P. (2d) 841; *Coppo v. Van Wieringen,* 36 Wn. (2d) 120, 217 P. (2d) 294. The record contains evidence from which the jury might have concluded respondent was not negligent, and therefore it cannot be held, as a matter of law, that the verdict was the only one that could have been returned.

The judgment is reversed and the cause remanded for a new trial.

SCHWELLENBACH, C. J., ROBINSON, MALLERY, and HAMLEY, JJ., concur.

---

May 23, 1951. Petition for rehearing denied.