[No. 34019. Department Two. July 25, 1957.]

GENE E. PALMER *et al.*, *Respondents*, v. THE CITY OF PUYALLUP, *Appellant.*[1]

[1]Reported in 313 P. (2d) 1114.

*Sweet, Merrick & Elston* and *H. J. Merrick*, for appellant.

*Jacobs & Peters*, for respondents.

DONWORTH, J.—This action was brought against the city of Puyallup and a contracting firm to recover damages for serious injuries suffered by plaintiff husband when he fell on an allegedly defective sidewalk in front of his home. The complaint stated two causes of action. In the first, it was alleged that the contracting firm engaged by the city had negligently damaged the sidewalk in the process of constructing *a sanitary sewer* along the center line of the street; in the second, it was alleged that the city had negligently failed to keep the sidewalk in a safe condition, had allowed it to become defective and dangerous, and that the city knew, or should have known, of such defective and dangerous condition. The evidence presented under the second cause of action related to *a storm sewer* located near the sanitary sewer which was repaired by city employees. Since

the contracting firm was exonerated from liability by the verdict of the jury, no further reference to the first cause of action will be made.

The city's answer denied negligence on its part, and alleged the affirmative defense of contributory negligence. Plaintiffs replied, denying the affirmative allegations of the answer. At the beginning of the trial (which took place approximately eight months after the filing of the reply), the city was permitted to make a trial amendment, pleading the existence of ordinance No. 294, which, it contended, placed the burden of maintaining the city sidewalks on the abutting property owners. In the amendment, it was alleged that plaintiffs owned the property abutting on the sidewalk on which the husband was injured, and that, therefore, any injuries suffered by the husband were the proximate result of his own negligence. As later mentioned in this opinion, plaintiffs did not plead in reply to this amendment, so that plaintiffs' ownership of the abutting property was undenied.

After a trial on the merits, the jury returned a verdict in favor of plaintiffs on the second cause of action, and judgment was entered thereon. Plaintiffs' first cause of action against the contracting firm and the city was dismissed with prejudice. The city appeals from the judgment entered on the second cause of action.

The evidence was conflicting on several material issues, but the jury resolved such conflicts in favor of respondents' version of the facts. The evidence, which the jury apparently believed, may be summarized as follows:

At about eight o'clock p. m., on January 13, 1955, respondent husband (hereafter referred to as respondent) left the family home, on Seventh avenue northwest, briefly to buy a package of cigarettes at a nearby gas station. Upon returning, he parked his car on a side street and began walking toward the house. As he stepped on the westerly portion of the concrete sidewalk in front of his property on Seventh avenue northwest, a portion of it collapsed under his weight causing him to fall backwards. He sustained severe back in-

juries, which required prolonged hospital treatment and ultimately an operation.

During the fall of 1954, the city was engaged in having two sewers installed in Seventh avenue northwest, in front of respondent's home—a sanitary sewer, which was put in at about the center of the street by the contracting firm above referred to, and a storm sewer near the south sidewalk, which was being repaired by the city's own employees. Since respondent's second cause of action (on which he recovered his judgment) is based on the city's negligence with respect to the latter operation, we need not now be concerned with the sanitary sewer installation further than to note that it was completed before the work on the storm sewer was begun.

The storm sewer repaired by appellant terminated on its west end in a catch basin, located immediately below and near the center of the westerly terminus of the sidewalk. From the catch basin, this sewer ran to the east, immediately below the center of the sidewalk, for a distance of about ten feet, where it commenced curving to the northeast, emerging from beneath the sidewalk at a point approximately fifteen feet from the west end of the sidewalk. There it made a slight curve towards the east and proceeded easterly for several city blocks, running parallel and very close to the north edge of the sidewalk.

Respondent's fall occurred several feet east of the west end of the sidewalk, at a point directly above the short portion of appellant's sewer which ran under the sidewalk. At that point, the earth supporting the sidewalk had settled, or otherwise subsided, as a result of which a dead-air space was created beneath the sidewalk.

Appellant's work commenced on November 15, 1954, and was completed within a week. Respondent's accident took place about two months thereafter.

In order to remove and replace the defective sewer tile, appellant dug a trench about four feet deep and over eighteen inches wide, which extended to the east from the place where the storm sewer curved out from beneath the sidewalk. In excavating this trench, appellant used a tractor

with backhoe attachment which had an eighteen-inch-wide bucket with an approximate capacity of one quarter cubic yard. Its weight was estimated at about two and one half or three tons. During the excavation, the wheels and stabilizing jacks of this machine were on the sidewalk very near to the place of respondent's subsequent fall.

Appellant's repair of the storm sewer was undertaken during a particularly rainy season. However, there was no rainfall on the day appellant's work was performed in the area where respondent's accident occurred. The soil in the area below three or four feet from the surface was described as "soupy water and sand." There was evidence of a sloughing off of the sides of the trench, although the evidence on this point was conflicting.

About a month before the accident occurred, there were cracks in the concrete sidewalk at the place where respondent fell. These cracks were not wider than the thickness of a dime.

Appellant's first four assignments of error complain of four instructions given the jury by the trial court.

By instruction No. 8, the jury was told that the city was required to exercise reasonable care in installing its sewerage system and "not to crack or damage the sidewalk on 7th Avenue Northwest nor to remove the subsoil supporting it in such a way as to make it hazardous and dangerous to pedestrians." It is argued that this was error because there was no evidence that the city had removed any subsoil at the place in question. However, there was testimony that the storm sewer trench, dug with the backhoe operated by city employees, was parallel to, and about a foot from, the edge of the sidewalk. It was for the jury to determine from this and other evidence regarding the city's operation whether it had exercised reasonable care in the premises.

By instruction No. 10, the court told the jury that, in determining whether the city had exercised reasonable care in keeping the sidewalk reasonably safe for travel,

". . . it was the duty of the city to take into consideration the fact that such sidewalk might lawfully be used at

night, and at times when the atmospheric conditions were such as might impede the vision of persons walking along the sidewalk, and the care of the city over its sidewalks must at all times be commensurate with such conditions as might reasonably be expected to exist."

It is claimed that the quoted portion was erroneous because there was no evidence that darkness, atmospheric conditions, or lack of good visibility had anything to do with respondent's accident. Respondent fell about eight o'clock p. m. on January 13th, and this was, of course, during hours of darkness. It is true that respondent did not base his claim for damages on insufficient light at the point where the sidewalk gave way under his weight, but the rule of law stated in the instruction was correct, and, since the accident happened during hours of darkness, we are unable to say that it was so prejudicial to appellant as to constitute reversible error. See *Slattery v. Seattle,* 169 Wash. 144, 147, 13 P. (2d) 464 (1932).

■ Instructions No. 12 and No. 13 will be considered together, since they involve the same question. They read as follows:

"You are instructed that a city is chargeable with notice of a dangerous opening, hole, or defect in a public sidewalk or street, although actual knowledge may not have been brought home to it or any official of it, if the evidence shows that such a state has existed for sufficient length of time so that the city, by exercising ordinary care might have learned of its condition, and not to know such fact would be negligence on the part of the city."

"You are further instructed that if any official of the City of Puyallup or any employee working upon the maintenance of streets, water, sewer or sidewalks working upon the said 7th Avenue Northwest had or should have had knowledge of the dangerous condition, then such notice is notice to the defendant City of Puyallup."

In support of its contention that the giving of these instructions was prejudicial error, appellant states in its brief:

"We feel that these instructions are contrary to the evidence. There is absolutely no evidence that the defect herein was an apparent opening or hole that was visible; it was merely a latent defect, and that in such a situation ac-

tual notice had to be given the City or its employees of said defect. We feel that the theory of constructive notice as outlined in these two Instructions is not applicable to the facts of this case. Furthermore, both of these instructions are in conflict with instructions 14 and 15, which give the theory of appellant's case, namely, latent defect. The jury could only be confused by these antagonistic and conflicting instructions."

We cannot agree with the city's position. There was evidence that, about two months before respondent fell, the city's employees had a two-and-a-half-ton backhoe resting on the sidewalk at, or very near, the place of the accident. Whether the cracks in the sidewalk which were seen by respondents between that time and the date of the accident were sufficient to constitute notice to the city of an unsafe condition, or whether the city's employees, in the exercise of reasonable care, should have known that the weight of the backhoe and the digging of the adjacent trench would make the sidewalk unsafe for public travel, was a question for the jury.

From our consideration of all the evidence, we cannot say that these two instructions were improper or confusing to the jury so that reversible error was committed in giving them.

Appellant next urges as error the failure of the trial court to instruct the jury with respect to ordinance No. 294 of the city of Puyallup, which, appellant contends, imposed upon respondent, as abutting owner, the primary responsibility for the maintenance or repair of the sidewalk abutting on his property. As above stated, this ordinance was not mentioned in the original pleadings, but the court at the beginning of the trial, with respondent's consent, permitted the city to plead it in a second affirmative defense. Respondent did not deny the allegations of this defense.

The subject ordinance provides, in part, as follows:

"Section 1. Wherever, in the judgment of the street commissioner of the City of Puyallup, or whenever in the judgment of any officer of said City acting as ex-officio street commissioners of said City the condition of any sidewalk along any of the streets, alleys, avenues or public places of

said City is such as to render the same unfit or unsafe for purposes of public travel, the said officer of said City shall immediately notify the owner of the property immediately abutting upon said portion of said sidewalk to repair the same within twenty-four hours and in case it is the judgment of said officer of said City that said sidewalk should be renewed and or rebuilt, then said officer shall further notify said owner of said property to rebuild and renew the same within ten days from the date of such notice."

The remaining sections of the ordinance provide substantially (1) as to the manner of giving notice to the owner to repair and rebuild; (2) that in the event of noncompliance (by the abutting property owner) with the order to repair or renew said sidewalk within the time designated therein, the appropriate officer shall cause the same to be renewed or repaired and the cost thereof shall be charged to the abutting property owner; (3) that the cost to the city of renewing or repairing such sidewalks shall be and become a lien upon the abutting property until paid; and (4) for attorney fees in effecting collection under the ordinance.

Assuming, without deciding, the validity of the ordinance, by its plain and unambiguous language it is made clear, having in mind the facts of this case, that the duty of an abutting owner, under the ordinance (whether it delegates the primary responsibility for the maintenance of the sidewalk, as appellant asserts, or merely provides for the assessment of the cost of repair against the abutting property owner), arises only out of an exercise of judgment by the proper city official, and then only after written notice thereof is given to the abutting property owner in the manner provided in the ordinance.

There is no evidence that respondent was ever given notice to repair the sidewalk in question, nor is there evidence that the street commissioner of the city of Puyallup performed his functions so as to purportedly impose upon respondent the duty which appellant contends is his by virtue of the ordinance. It follows that the trial court was correct in refusing to give appellant's proposed instruction relative to the ordinance.

Error is further assigned to the refusal of the trial court to grant appellant's motion for dismissal at the close of respondent's case, and again at the close of the entire case; in denying appellant's motion for judgment notwithstanding the verdict of the jury or, in the alternative for a new trial; and in entering judgment on the verdict of the jury. We have considered these assignments of error and deem them to be without merit.

Appellant's argument that the verdict in this case makes appellant the insurer of anyone using the sidewalk is disposed of in our former decisions (see *Grass v. Seattle*, 100 Wash. 542, 171 Pac. 533; *Fritsche v. Seattle*, 10 Wn. (2d) 357, 116 P. (2d) 562; and 25 Am. Jur. 641, 701), and is untenable. In this case, there was ample evidence from which the jury could have concluded that appellant's employees, with knowledge of the physical characteristics of the surrounding soil, working as they did with heavy equipment in close proximity to the place of respondent's fall, caused the subsidence of the soil beneath the sidewalk. In such case, appellant would be presumed to have notice of the defect. *Falconer v. Safeway Stores, Inc.*, 49 Wn. (2d) 478, 480, 303 P. (2d) 294 (1956).

Likewise, the jury could have found from the evidence that appellant's workmen, in the exercise of reasonable care, under the circumstances existing, had notice, or should have had notice, of the defect. These factual issues were properly submitted to the jury, as was the issue of respondent's contributory negligence, and we find nothing in the record which would warrant the trial court or this court in interfering with its verdict.

The judgment is affirmed.

HILL, C. J., SCHWELLENBACH, ROSELLINI, and FOSTER, JJ., concur.