REEVES, APPELLEE, *v.* CITY OF SPRINGFIELD, APPELLANT.*

*Motion to certify the record overruled, October 5, 1960.

(No. 569—Decided March 17, 1960.)

*Messrs. Durfey, Martin, Browne & Hull* and *Mr. John O. Harper*, for appellee.

*Mr. Thomas J. Veskauf*, law director, and *Mr. Charles E. Carter*, for appellant.

WISEMAN, P. J.  This is an appeal on questions of law from the Common Pleas Court of Clark County which entered a judgment on a verdict rendered in favor of the plaintiff in an action brought by the husband to recover damages for loss of services of his wife and for expenses, resulting when the wife fell on the sidewalk in the downtown area of the city of Springfield.

The accident happened on August 19, 1958, during the daylight hours.  In his petition, plaintiff alleges that when "walking in a westerly direction on the sidewalk on the south side of West Main Street a short distance west of the intersection of West Main Street and Center Street * * * the plaintiff's wife caught her heel in a hole in the center of the sidewalk which caused her to be thrown forward against the pavement with force and violence causing injuries hereinafter set forth.  Said sidewalk at that time and place was in a dangerous and unsafe condition in that it contained a hole triangular in shape approximately seven (7″) inches on each of the three sides, said hole having a depth of two inches (2″) or more.  * * * the hole was partially filled and obscured by dust and small bits of debris and paper so that its true nature and depth was obscured from view.  Plaintiff says that the hole in said sidewalk had been in existence for many months, that it constituted a dangerous and unsafe condition in the sidewalk, and it constituted a nuisance, and had so existed for many months prior to the time herein complained of so that the defendant, the city of Springfield, Ohio, had knowledge thereof, or in the exercise of ordinary care should have known, or known of, or had knowledge of the existence of said hole and the danger it presented to the users of the

public sidewalk. * * * Defendant wholly failed and neglected as herein described to exercise ordinary care, to maintain said sidewalk at the place aforesaid open and free from nuisance, defect and obstruction and in reasonably safe condition for travel.''

The defendant, for its first defense, pleaded a general denial, and as a second defense pleaded contributory negligence. Plaintiff's reply to the second defense was a general denial.

The cause was tried to a jury which returned a general verdict in favor of the plaintiff in the sum of $2,400, and answered three interrogatories as follows:

''Interrogatory No. 1.

''Was the defendant, at the time of or before the accident involved in this action, aware of the defect complained of?

''Answer No.

''Interrogatory No. 2.

''If the answer to Interrogatory No. 1 is 'no,' did the defect exist for such a period of time that the defendant should have known of the defect by the exercise of ordinary care?

''Answer Yes.

''Interrogatory No. 3.

''If your answer to Interrogatory No. 1 or 2 is 'yes,' then after said notice did the defendant have ample time to repair said defect or warn the public against same?

''Answer Yes.''

Defendant's motion for a directed verdict at the close of all the evidence and motion for judgment notwithstanding the verdict were overruled.

The errors assigned by defendant, appellant herein, are: Overruling motion for a directed verdict and motion for judgment notwithstanding the verdict; admission of evidence over defendant's objection; refusing to give special written instructions to the jury requested by the defendant; and that the judgment is contrary to law and contrary to the manifest weight of the evidence.

The evidence presented by the plaintiff tended to support the allegations of the petition to the effect that the wife of the plaintiff caught her heel in a hole in the middle of a 12-foot sidewalk, used daily by a large number of pedestrians, the hole

being triangular in shape, measuring six or seven inches on each side; that the hole was two or three inches in depth and was filled to within one-half inch of the surface of the sidewalk with loose debris; and that plaintiff did not observe the hole before she fell. There was evidence introduced to the effect that the edges of the hole were not rough or sharp, but showed considerable wear and weathering. The wife was wearing what may be considered a conservative leather shoe, with a solid and rather broad heel one-inch high.

The duty imposed on the city is controlled by Section 723.01, Revised Code, which provides:

"Municipal corporations shall have special power to regulate the use of the streets. The legislative authority of such municipal corporation shall have the care, supervision, and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and shall cause them to be kept open, in repair, and free from nuisance."

This section of the Code does not impose an absolute liability on the city; the city is not an insurer of the safety of its streets. *Kimball* v. *City of Cincinnati*, 160 Ohio St., 370, 373, 116 N. E. (2d), 708. However, the city is liable for negligence "in failing to repair or remove or guard against defects or obstructions therein, after actual or constructive notice of their existence. * * * The duty which exists is that of exercising ordinary care only. * * * Whether the municipal corporation has been guilty of negligence or has permited a nuisance in such respect is ordinarily a question of fact for the jury." See 27 Ohio Jurisprudence (2d), 335 *et seq.*, Section 255.

It was claimed by the appellant that the facts at best show a qualified nuisance. With respect to a qualified nuisance, in 27 Ohio Jurisprudence (2d), 338, Section 256, it is stated:

"According to the Supreme Court, the provision of the Code requiring a municipality to keep its streets open, in repair, and free from nuisance does not enjoin upon municipalities a specific legal requirement, but provides a general rule of conduct and makes negligence the basis of liability for its violation, unless an absolute nuisance is proven to exist. Or, as has been said, an action in tort, predicated upon a violation of the Code

provision, may be grounded in qualified nuisance—*i. e.*, nuisance dependent upon negligence—as well as in absolute nuisance.''

Supporting the text, the case of *Taylor* v. *City of Cincinnati*, 143 Ohio St., 426, 55 N. E. (2d), 724, 155 A. L. R., 44, is cited which defines a ''qualified nuisance'' in the third paragraph of the syllabus as follows:

''As distinguished from absolute nuisance, a qualified nuisance or nuisance dependent upon negligence consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk of harm, which, in due course, results in injury to another.''

The contention of the defendant in the instant case is stated in its brief as follows:

''The issue in the instant case therefore is whether as a matter of law the city of Springfield, at the time of the accident, so negligently or carelessly did or permitted anything to be done that would create a potential and unreasonable risk of harm, which in due course resulted in any injury to the plaintiff's wife herein.''

The appellant claims that the court should have directed a verdict for the defendant at the close of all of the evidence and that after verdict the court should have sustained defendant's motion for judgment notwithstanding the verdict on the ground that as a matter of law the defect in the sidewalk did not constitute an unreasonable risk of harm, citing *Kimball* v. *City of Cincinnati, supra*, where the court held that a variance of from one-half to three-fourths of an inch in the heights of adjacent sections of a sidewalk is a slight defect commonly found in sidewalks, and the municipality was not guilty of a violation of the duties imposed upon it by Section 3714, General Code (now Section 723.01, Revised Code). On page 373, the court held that the slight defect in the sidewalk ''as a matter of law, did not form a basis of a charge of negligence on the part of the city.'' In that case, a qualified nuisance was relied on, as in the case at bar. However, the court, on page 373, was careful to state: ''From the many decisions on the subject we do not propose to adopt any maximum variation in height as the boundary line between a condition not due to negligence and one which should be submitted to a jury.''

In the instant case, the defendant contends that the evidence shows that the hole was only one-half inch in depth, and that the rule in the *Kimball case* controls. However, we find in the record probative and substantial evidence to the effect that the hole was two or three inches deep, but was filled with soft debris to within one-half inch of the surface of the sidewalk. The appellee contends that the soft material gave way under the weight of a person stepping into the hole and that such debris obscured the dangerous condition of the hole.

The defendant cites *O'Brien* v. *City of Toledo*, 167 Ohio St., 35, 146 N. E. (2d), 122, where the plaintiff was using a sidewalk with which she was familiar at about noon on a bright, sunny day and suffered injuries from a fall caused by a defect in the sidewalk. The defect complained of consisted of a separation or crack, running parallel with the curb, between two slabs of concrete about five feet long. The crack was from 1½ to 1¾ inches wide, and there was a difference in elevation of the two slabs along the length thereof from ⅜ of an inch at one end to ½ inch at the other end. The depth of the crack tapered from 3½ inches at the alley curb line to ½ inch at the other end. The court, on authority of the *Kimball case*, held the defendant was entitled to a directed verdict.

It is not difficult to distinguish that case from the instant case on the facts. In the case under consideration the hole was triangular in shape, with the sides six or seven inches in length and the hole was from two to three inches in depth. A hole of this nature is not commonly found in a sidewalk, and a defect of this nature in a much used sidewalk is more dangerous and perilous to pedestrians.

The defendant cites the case of *Gallagher* v. *City of Toledo*, 168 Ohio St., 508, 156 N. E. (2d), 466, where the slab of the sidewalk had dropped "an inch and a half or two" inches from the adjoining slab. The court applied the rule in the *Kimball case*, and affirmed the judgment of the Court of Appeals in entering final judgment for the defendant. Also cited is *Buckley* v. *City of Portsmouth*, 168 Ohio St., 513, 156 N. E. (2d), 468, where the defect consisted of a man hole or sewer-catch-basin cover projecting two inches above the level of the surrounding sidewalk. The plaintiff tripped over the cover, which was plainly visible.

In that case, the evidence showed that the plaintiff had been walking back and forth over the sidewalk for a considerable period of time while picketing the place of business; that he lived over the place of business and was familiar with the condition of the sidewalk. The court held that the plaintiff's failure to look and observe the condition of the sidewalk constituted negligence as a matter of law, proximately contributing to his injury. Also, the court held that the defect was not of such substantial nature as to impose liability on the city under Section 723.01, Revised Code. In our opinion, the cases cited by the defendant are distinguishable from the case at bar on the facts.

The city had no actual notice of the defect, but the evidence indicates the edges of the hole were considerably worn by use and the weather. The jury had a right to, and did, conclude in answer to an interrogatory that the defect existed "for such a period of time that the defendant should have known of the defect by the exercise of ordinary care." In the instant case, a jury question was presented. The first assignment of error is not well made.

The plaintiff was permitted, over defendant's objection, to introduce into evidence photographs of the face of the plaintiff's wife, taken three days after the accident while she was at the hospital. The defendant contends that the extent of the injuries suffered by plaintiff's wife was not an issue; that the only question at issue was the legal liability of the city and that the introduction of the photographs was prejudicial. We do not agree. The defendant pleaded a general denial which put in issue the extent of the injuries of plaintiff's wife. At the pretrial conference the defendant did not concede the extent of the injuries nor the amount of money expended for medical, hospital care, etc., as a consequence of the injury. The admission of the photographs was a matter of discretion resting with the trial court, and the action of the court will not be disturbed in the absence of a showing of abuse of discretion. *Hoover* v. *Turner, Admr.*, 42 Ohio App., 528, 534, 182 N. E., 598. 21 Ohio Jurisprudence (2d), 533, Section 509. In our opinion, the court did not abuse its discretion in permitting the photographs to be introduced.

The appellant claims the trial court committed prejudicial

error in permitting the plaintiff, over its objection, to introduce a photograph of the hole in the sidewalk taken by a professional photographer three days after the accident. The defendant's objection to the admissibility was grounded on the fact that the debris had been removed from the hole before the photograph was taken; that the photograph is not a correct representation of the condition at the time of the fall; and that in admitting such evidence the court abused its discretion. The defendant cites *Rutherford* v. *Western Union Telegraph Co.*, 75 Ohio App., 176, 60 N. E. (2d), 936, which held that photographs taken a considerable time after the collision were admissible, provided the photographs correctly represented the roadway as it existed at the time of the collision. In the case at bar, several witnesses, including witnesses called by the defendant, testified that the hole had some loose, soft material in it, and, when taken out, the hole was two or three inches deep. In *Bailey* v. *Greeley General Warehouse Co.*, 52 Ohio Law Abs., 469, 83 N. E. (2d), 244, the headnotes are as follows:

"1. In a personal injury action, photographs which can have no effect other than to convey to the jurors by visual means the same facts to which a witness has testified in detail are admissible.

"2. The acceptance or rejection of photographic evidence rests within the sound discretion of the trial court.

"3. Photographs which are posed to reconstruct the scene of the accident are admissible where they have been properly identified as being fair and accurate representations of conditions as the witness saw them."

See, also, *Shears* v. *Von Tulganburg*, 77 Ohio Law Abs., 188, 148 N. E. (2d), 926; *Streit* v. *Kestel*, 108 Ohio App., 241, 243, 161 N. E. (2d), 409.

In *Cincinnati, Hamilton & Dayton Ry. Co.* v. *De Onzo*, 87 Ohio St., 109, 100 N. E., 320, the court, on page 115, said:

"* * * it may be stated as a general rule that photographs are admissible in evidence when they appear to have been accurately taken, and are proven to be correct representations of a subject in controversy, which subject cannot itself be produced, or of some subject incident to it, and also of such a nature as to throw light upon the disputed point. If the photo-

graph has been verified as above indicated, it is a proper item of evidence to go to a jury.''

In our opinion, the court did not abuse its discretion in permitting the photograph of the hole, with the debris removed, to be presented in evidence.

The defendant claims the court erred in refusing to give to the jury special instruction No. 3, requested by the defendant, which reads as follows: ''The court charges you that the law does not require that which is unreasonable, nor does it condemn an act or omission as negligent which can be done or prevented only by extraordinary exertion or by the expenditure of extraordinary sums of money.''

The requested instruction is an abstract statement and is not applicable to the facts. The requested instruction assumes certain facts which were not conceded or proved, to wit, extraordinary exertion or the expenditure of extraordinary sums of money. The special instruction requested was properly refused. See *Peitsmeyer* v. *Omar Baking Co.*, 95 Ohio App., 37, 117 N. E. (2d), 184; *Leonardi* v. *A. Habermann Provision Co.*, 143 Ohio St., 623, 634, 56 N. E. (2d), 232. Furthermore, the substance of the requested instruction was embodied in Special Instruction No. 2 which was given.

Finally, the defendant claims the judgment is contrary to law and contrary to the manifest weight of the evidence. Counsel for the defendant concedes that this assignment of error is based on the same proposition of law advanced under the first error assigned. Under the evidence, we cannot find as a matter of law that the plaintiff's wife was contributorily negligent; neither can we find as a matter of law that the sidewalk was in a reasonably safe condition for pedestrian traffic.

We find no error in the record prejudicial to the rights of the defendant and no error assigned well made.

*Judgment affirmed.*

CRAWFORD and KERNS, JJ., concur.