OPINION
Plaintiffs-appellants, Linda S. Walters and her husband, Charles A. Walters, appeal from a Preble County Court of Common Pleas decision granting summary judgment in favor of the city of Eaton in a slip and fall lawsuit. Based upon the reasons that follow, we reverse the trial court's decision to grant summary judgment and remand the case for further proceedings.
On March 22, 1998, at about one o'clock in the afternoon, Linda and Charles began crossing Barron Street in the city of Eaton with their son and grandson. They were crossing at a designated crosswalk on their way to the Old Hometown Inn Restaurant. They had dined at the Old Hometown Inn several times before for lunch and dinner.
As Linda was walking in the crosswalk, her foot was caught in a gap between a manhole and the asphalt, causing her to fall. After she fell, motorists continued to drive around her. Linda sustained injuries from the fall. Subsequently, appellants filed a negligence action against the city of Eaton.
Charles testified at his deposition that the traffic was heavy, as usual. Although the crosswalk is marked with a traffic sign, pedestrians using the crosswalk are not protected by a traffic light. Charles testified they had crossed at this area a few times before and that motorists did not generally abide by the crosswalk sign. Linda also testified that drivers do not always stop for pedestrians in the crosswalk, despite the traffic sign.
Linda testified that she does not recall looking down at the ground while she crossed the street because she was watching for traffic. Linda estimated that the gap at the edge of the manhole was between three and four inches deep. Charles testified that he thought the gap was about four inches deep. Although Linda testified that she was aware that there was a manhole in the crosswalk, she did not testify to having any knowledge of the gap before this incident.
Charles further testified that he is familiar with the maintenance of manholes because he has installed them himself and has overseen the installation of manholes in his business throughout a period of fifteen to seventeen years. Charles testified that the manhole on the crosswalk where his wife fell rises above the asphalt, whereas most manhole castings are flush with the asphalt. Charles testified that "this is not a typical existing condition for a manhole" and that a manhole "becomes a road hazard" if it rises above the pavement.
Morris Fudge, who has been the Supervisor of Public Maintenance for Eaton since 1987, testified at his deposition that he is in charge of maintaining the city's streets. Barron Street, which is Route 127, is one of the main streets in Eaton. The crosswalk is located near the intersection of Barron Street and Main Street, which is Route 35. Fudge testified that these streets are probably the two most frequently traveled streets in Eaton. Fudge testified that in his opinion it would be reasonable for a person who is crossing Barron Street at the crosswalk to be concerned about approaching traffic. When asked to examine a picture of the manhole and its surrounding area, Fudge testified that the manhole in its condition could be a roadway hazard for pedestrian traffic using the crosswalk.
Fudge testified that Barron Street was subject to periodic visual inspections and that it was frequently traveled by his maintenance crews. Fudge testified that no repairs had been made to the manhole in question during the two years prior to the date of the accident. Moreover, Fudge estimated that Barron Street had not been paved in the past twenty years. However, Fudge testified that the crosswalk had been repainted within the last year. Fudge testified that the manhole's condition was likely caused by freezing and thawing, in that "water gets underneath and freezes and pops it out."
The city of Eaton filed a motion for summary judgment. Upon review of the evidence presented, the trial court granted summary judgment to the city of Eaton. In its decision the trial court found that appellants' action was barred by sovereign immunity. The trial court further held that the condition of the manhole did not constitute a hazard of which the city of Eaton had actual or constructive notice. In addition, the trial court found that even if the city of Eaton was not immune from liability, insufficient evidence was presented to show the city's negligence. The trial court stated that this is "a minor condition that is open and obvious," and noted that the city is not the insurer of safety to pedestrians. Following this decision, appellants filed this appeal, raising the following assignment of error for our consideration:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
In its sole assignment of error, appellants claim that the trial court erred by granting summary judgment in favor of the city of Eaton.
Pursuant to Civ.R. 56(C), a summary judgment is appropriate when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. This court reviews a trial court's decision to grant summary judgment de novo.Jones v. Shelly Co. (1995), 106 Ohio App.3d 440, 445.
"Summary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try." Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 358, quoting Norris v. Ohio Std.Oil Co. (1982), 70 Ohio St.2d 1, 2. Summary judgment must be granted cautiously with any doubts resolved in favor of the nonmoving party.Murphy at 359.
To avoid summary judgment in a negligence action, the plaintiff must show: (1) the defendant owed her a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. Menifee v. OhioWelding Products, Inc. (1984), 15 Ohio St.3d 75, 77. Linda alleges that the city of Eaton owed her the duty of keeping its crosswalk in repair and free from nuisance, that this duty was breached, and that she suffered injury as a result of this breach. The city of Eaton argues that it is shielded from liability by sovereign immunity. The city of Eaton also contends that even if sovereign immunity does not apply, appellants have failed show that it has breached a duty owed to Linda.
R.C. Chapter 2744 establishes a three-tiered analysis for determining whether a political subdivision is immune from liability. Cater v. Cityof Cleveland (1998), 83 Ohio St.3d 24, 28. In the first tier, R.C.2744.02(A) sets forth the general rule of immunity, which is that political subdivisions are not liable in damages for the personal injuries or death of a person. Id. However, the immunity afforded a political subdivision in R.C. 2744.02(A)(1) is subject to the five exceptions to immunity listed in R.C. 2744.02(B). Id. Therefore, once immunity is established under the first tier, the second tier of analysis is whether any of the five exceptions to immunity in 2744.02(B) apply. Id. Under the third tier of analysis, immunity can be reinstated if the political subdivision successfully argues that one of the defenses contained in R.C. 2744.03 applies to the circumstances of the case. Id.
R.C. 2744.02(A)(1) states:
 For purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
The maintenance and repair of the manhole at issue is a governmental function under R.C. 2744.01(C)(2)(e).[1] Austin v. City of Cleveland
(Feb. 2, 1995), Cuyahoga App. No. 66575, unreported. Therefore, under the first tier of our analysis, the city of Eaton is, as a general rule, immune from lawsuits based upon the failure to maintain or repair manholes.
In the second tier of the analysis, we consider whether an exception to the general rule of immunity applies under the circumstances of this case. R.C. 2744.02(B)(3) states the following:
 (B) Subject to sections 2744.03 [defenses or immunities of subdivision and employee] and 2744.05 [limitations on damages awarded] of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
* * *
 (3) Except as otherwise provided in section 3746.24
of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance * * *.[2]
For R.C. 2744.02(B)(3) to apply, the facts must demonstrate that the city of Eaton failed to keep the road in repair or free from nuisance. Municipalities are not liable as a matter of law for minor defects in sidewalks or other walkways because these are commonly encountered and pedestrians should expect such variations in the walkways. Kimball v.Cincinnati (1953), 160 Ohio St. 370, 374. When determining a political subdivision's duty under R.C. 2744.02(B)(3) to keep its roadways free from nuisance, the focus is on "whether a condition exists within the township's control that creates a danger for ordinary traffic on the regularly traveled portion of the road." Franks v. Lopez (1994),69 Ohio St.3d 345, 348. A pothole in a roadway is one of the classic examples of such nuisances. Cater, 83 Ohio St.3d at 30.
When determining liability for defects in a public walkway that have caused injury, attendant circumstances should be considered. Cash v. Cityof Cincinnati (1981), 66 Ohio St.2d 319, 323-24. Although there is no exact definition of "attendant circumstances," they generally include "any distraction that would come to the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time." McGuire v. Sears, Roebuck Co. (1996),118 Ohio App.3d 494, 499. "The attendant circumstances must, taken together, divert the attention of the pedestrian, significantly enhance the danger of the defect, and contribute to the fall. * * * Both circumstances contributing to and those reducing the risk of the defect must be considered." Id., quoting Stockhauser v. Archdiocese ofCincinnati (1994), 97 Ohio App.3d 29, 33-34.
Construing the facts of the case sub judice in the light most favorable to appellants, reasonable minds could conclude that attendant circumstances significantly enhanced the defect's danger and contributed to Linda's fall. Linda was not looking down at the pavement of the street as she crossed the crosswalk because she was concerned with approaching traffic. The crosswalk, although marked by a pedestrian sign, did not have traffic lights to protect crossing pedestrians from oncoming vehicles. There was testimony that motorists do not always stop for pedestrians in the crosswalk, despite the traffic sign. In fact, Linda testified that the traffic continued driving around her after she fell. Fudge confirmed that the streets that intersect near the crosswalk are probably the two most frequently traveled streets in Eaton. Fudge in his testimony admitted that the manhole in its condition could be a roadway hazard for pedestrian traffic using the crosswalk.
The analysis does not end here, however. Even if it is demonstrated that a public road has not been kept in repair or free from nuisance, a political subdivision must have actual or constructive notice in order to be liable under the exception to sovereign immunity under R.C.2744.02(B)(3). Harp v. Cleveland Heights (2000), 87 Ohio St.3d 506,509. There is constructive knowledge if such nuisance existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger. Id. at 512.
The facts presented to the court on summary judgment do not suggest that the city of Eaton had actual knowledge that the crosswalk was in need of repair. However, appellants argue that the facts show that the city of Eaton had constructive notice of the dangerous condition that existed in the crosswalk.
Fudge testified that the street was inspected periodically and frequently traveled by city maintenance crews. Fudge also testified that the crosswalk had been repainted within a year of the accident, and a picture of the manhole reveals that one of the diagonal stripes painted on the pavement crosses the manhole. Fudge testified that the street not been paved in twenty years. Fudge testified that the gap between the manhole and the asphalt was likely caused by weathering. Upon hearing this testimony, a jury could reasonably conclude that the city of Eaton could or should have discovered the condition of the crosswalk prior to the accident, that it existed for a sufficient period of time to have been discovered, and that the discovery would have created a reasonable apprehension of a danger to pedestrian traffic. See Reeves v.Springfield (1960), 111 Ohio App. 387, 393; Hobson v. City of Dayton
(Sept. 20, 1996), Montgomery App. No. 15497, unreported.
Construing the evidence most strongly in appellants' favor, we find that reasonable minds could find that the city of Eaton had constructive notice of the defect so that it recognized or should have recognized that this condition created a reasonable apprehension of potential danger. Thus, we find that a question of fact remains as to whether the city of Eaton had constructive notice of the nuisance. Under the second tier of our analysis, we find that appellants have presented evidence to show that an exception to the general rule of immunity may apply in this case.
In the third tier of our analysis, we must consider the city of Eaton's argument that the defense provided by R.C. 2744.03(A)(5) revives its political immunity. R.C. 2744.03(A)(5) states:
 The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
Although the city of Eaton contends that R.C. 2744.03(A)(5) applies, the city of Eaton did not present evidence indicating that the failure to repair the gap created between the manhole and the asphalt was a result of a discretionary judgment of the city of Eaton in how it handles its road maintenance. The Supreme Court of Ohio has previously stated, "[P]hysical impediments such as potholes are easily discoverable, and the elimination of such hazards involves no discretion, policy-making or engineering judgment. The political subdivision has the responsibility to abate them and it will not be immune from liability for its failure to do so." Franks v. Lopez (1994), 69 Ohio St.2d 345, 349. See, also,Perkins v. Norwood City Schools (1999), 85 Ohio St.3d 191, 193. The facts presented at summary judgment do not demonstrate that R.C.2744.03(A)(5) is applicable. We find that the city of Eaton has not shown that it is immune from liability under the third tier of our analysis.
However, the city of Eaton further argues, and the trial court found, that even if sovereign immunity does not bar appellants' lawsuit, the danger was open and obvious and therefore the city is not liable for Linda's injuries.
An owner of a premises is under no duty to protect a person from known dangers or dangers which are so obvious and apparent that the person should reasonably be expected to discover them and protect himself from them. Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203. The rationale behind this doctrine is that the open and obvious nature of the hazard itself serves as a warning so that others can be reasonably expected to discover the danger and take appropriate actions necessary to protect themselves. Simmers v. Bentley Constr. Co. (1992),64 Ohio St.3d 642, 644.
However, attendant circumstances act as an exception that allows a plaintiff to avoid the open and obvious doctrine. McGuire v. Sears,Roebuck Co. (1996), 118 Ohio App.3d 494, 498. As discussed above, the evidence presented raises a triable issue of fact as to whether there were attendant circumstances that distracted Linda and significantly enhanced the danger of the defect and contributed to her fall. Therefore, the city of Eaton was not entitled to summary judgment on the basis of the open and obvious doctrine.
When the evidence is viewed in the light most favorable to appellants, it supports the conclusion that reasonable minds could differ as to the city of Eaton's negligence. Therefore, the assignment of error is sustained. The decision of the trial court granting summary judgment to the city of Eaton is reversed, and the matter is remanded to the trial court for further proceedings.
Judgment reversed and remanded.
WALSH and POWELL, JJ., concur.
[1] R.C. 2744.01(C)(2)(e) provides: "A `governmental function' includes, but is not limited to * * * * [t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds[.]"
[2] In addition to R.C. 2744.02(B)(3), which applies to all political subdivisions, R.C. 723.01 applies specifically to municipal corporations. R.C. 723.01 states:
 Municipal corporations shall have special power to regulate the use of the streets. Except as provided in section 5501.49 of the Revised Code, the legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance.